**PEOPLES BANK OF NORTHERN KENTUCKY, INC.; PBNK, Inc., f/k/a Bancorporation of Northern Kentucky, Inc., Appellants,**

v.

**CROWE CHIZEK AND COMPANY LLC; William B. Brizendine, Appellees.**

No. 2007–CA–001174–MR.

Court of Appeals of Kentucky.

June 6, 2008.

Rehearing Denied Sept. 9, 2008.

Discretionary Review Denied by Supreme Court March 11, 2009.

Ronald R. Parry, Covington, KY, for appellant.

Gary L. Prior, J. Jeffrey Patton, Daniel I. Konieczny, Chicago, IL, Henry E. Kinser, Virginia Hamilton Snell, Lexington, KY, for appellees.

Before COMBS, Chief Judge; ACREE and WINE, Judges.

## OPINION

WINE, Judge.

Peoples Bank of Northern Kentucky, Inc., and PBNK, Inc., f/k/a Bancorporation of Northern Kentucky, Inc. (collectively "PBNK") appeals from summary judgments of the Boone Circuit Court dismissing its complaint against Crowe Chizek and Company, LLC ("Crowe Chizek") and William B. Brizendine ("Brizendine"). We agree with PBNK that summary judgment was not appropriate on its claims for professional negligence and breach of fiduciary duty as these claims were not barred by the statute of limitations or by the release contained in the contracts between PBNK and Crowe Chizek. Furthermore, the contracts do not bar all of PBNK's claims for consequential and punitive damages arising from Crowe Chizek's negligence. We also find that PBNK has presented sufficient evidence of gross negligence to create a jury issue for punitive damages. However, we agree with the trial court that PBNK is not entitled to recover its claimed check conversion damages because those losses were not proximately caused by any negligence of Crowe Chizek. We also find that summary judgment was appropriate on PBNK's claims of aiding and abetting liability because Crowe Chizek's alleged negligence does not meet the requirements for civil conspiracy. Finally, we find that summary judgment was appropriate on PBNK's claims under Kentucky Revised Statute ("KRS") 271B.8–300, but that statute may be relevant to any defenses based on comparative fault

and as a defense to Crowe Chizek's third-party claims. Hence, we affirm in part, reverse in part, and remand for further proceedings on the merits of the remaining claims.

For purposes of this appeal, the following facts are not in dispute: PBNK was organized in 1992. John O. Finnan served as president and chief executive officer of PBNK from its inception until April 2002. Marc Menne worked for PBNK during the same period, first as senior vice-president in charge of commercial lending and later as executive vice-president in charge of commercial lending. Both Finnan and Menne were also members of the board of directors of PBNK.

In 1996, Eskew and Gresham, P.S.C., became the accountants and auditors for PBNK. Brizendine was a partner with Eskew and Graham and had primary responsibility for providing independent accounting and auditing services to PBNK. In 1998, Crowe Chizek acquired the assets of Eskew and Gresham. As a result of the merger, Brizendine became a partner with Crowe Chizek and he continued to be primarily responsible for providing services to PBNK.

During this period, PBNK's largest loan customer was real estate developer William Erpenbeck and the entities he controlled (collectively "Erpenbeck"). Finnan and Menne supervised Erpenbeck's loan activities for the bank. In addition, they began to develop a close friendship with Erpenbeck, frequently traveling and vacationing with him. In addition, Erpenbeck built houses and sold them to Finnan and Menne for below cost.

In December 1997, Finnan and Menne, along with their spouses, created JAMS Properties, LLP ("JAMS"), a limited partnership specifically organized to purchase model homes from Erpenbeck entities. Typically, JAMS would purchase model

homes or condominiums from Erpenbeck at cost, but would create fictitious purchase contracts showing a much higher purchase price. The parties would then go to banks other than PBNK to obtain mortgages for the amounts stated on the fictitious purchase contracts. To obtain these mortgages, JAMS submitted fraudulent HUD statements to the lending banks. The excess loan proceeds would then be divided between Erpenbeck and JAMS. Thereafter, Erpenbeck would rent the properties from JAMS, which would use the rental payments to pay the mortgages. From December 1997 through 2000, JAMS purchased twenty-five properties from Erpenbeck and borrowed a total of $505,950.00 in excess of the actual purchase prices of these properties. By 2000, JAMS had a total mortgage indebtedness of nearly $3.9 million and was financially dependent upon Erpenbeck.

Finnan and Menne hired Crowe Chizek in March 1998 to perform tax services for JAMS. Brizendine served as engagement partner for Crowe Chizek's dealings with JAMS. Crowe Chizek prepared tax returns for JAMS for the tax years 1997 through 2001. JAMS maintained all of its bank accounts with PBNK during this period.

Beginning in January 2000, Erpenbeck began to deposit checks into his PBNK account that were payable to other individuals, entities or banks. This conduct continued until late March of 2002, when it was discovered by PBNK. In early 2001, Erpenbeck also caused a kite of insufficient funds checks to be conducted among various accounts, including the account at PBNK. When the kiting scheme was discovered by another bank, Erpenbeck's PBNK account became substantially overdrawn. Finnan and Menne authorized additional loans to Erpenbeck to cover these overdrafts.

In April of 2002, Finnan informed Brizendine of Erpenbeck's check diversion and check kiting schemes. Upon further review of JAMS' tax files, Brizendine discovered the relationship between JAMS and the Erpenbeck-related companies. He advised Finnan to inform the PBNK board of the relationship and potential conflict of interest. Upon learning of the relationship, the PBNK board notified authorities and hired an independent law firm to conduct an internal investigation. The investigations revealed the extent of the dealings between Erpenbeck, JAMS, Finnan and Menne, the extent of the check kiting and check diversion schemes, the post–2001 loans to Erpenbeck, and Erpenbeck's default on the loans from PBNK and other banks. Finnan and Menne resigned their positions shortly thereafter.

The adverse publicity related to the scandal caused many customers to withdraw their funds from PBNK, significantly damaging its reputation and eventually destroying its banking business. PBNK ceased operations in November of 2002 and sold its remaining assets at a substantial loss. Erpenbeck was eventually convicted on numerous federal bank fraud charges. Finnan and Menne later pled guilty to other federal bank fraud charges.

In March of 2003, PBNK filed this action against Crowe Chizek and Brizendine. The complaint, as later amended, asserted causes of action for: (1) aiding and abetting Finnan's and Menne's breaches of fiduciary duty; (2) aiding and abetting Finnan's and Menne's breaches of KRS 286.3–065; (3) professional negligence; (4) breach of fiduciary duty; and (5) violation of KRS 271B.8–300. PBNK sought both compensatory and punitive damages for these claims. The parties conducted substantial discovery over a four-year period.

On March 15, 2007, Crowe Chizek filed six motions: (1) motion for summary judg-

ment based on written releases executed by PBNK; (2) motion for summary judgment based on the statute of limitations; (3) motion for summary judgment on PBNK's claim for punitive damages; (4) motion for judgment on the pleadings on PBNK's claim for violation of KRS 271B.8–300; (5) motion for summary judgment on the aiding and abetting counts; and (6) motion for partial summary judgment on PBNK's claims for check conversion losses. After considering the pleadings, record, and arguments of counsel, the trial court entered orders on May 2, 2007, granting all of Crowe Chizek's motions and dismissing PBNK's complaint. This appeal followed.

Since the trial court did not set out its grounds for granting the motions for summary judgment, we shall presume that the court did so for the reasons set out in Crowe Chizek's motions. The standard of review governing an appeal of a summary judgment is well settled. We must determine whether the trial court erred in concluding that there was no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure ("CR") 56.03.

■ In *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255, 256 (Ky.1985), the Supreme Court of Kentucky held that for summary judgment to be proper, the movant must show that the adverse party cannot prevail under any circumstances. The Court has also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Because factual findings are not at issue, there is no requirement that the appellate court defer to the trial court. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480.

PBNK first argues that the trial court erred in dismissing its claims that Crowe Chizek and Brizendine aided and abetted Finnan's and Menne's misconduct. PBNK maintains that Crowe Chizek had actual knowledge of the relationship between Finnan, Menne and Erpenbeck through its representation of JAMS. Given Crowe Chizek's failures to discover and disclose the misconduct relating to JAMS, and to properly audit PBNK's loan accounts, director's accounts, and related party transactions, PBNK alleges that "a jury could have concluded that Crowe Chizek intentionally joined with and aided and abetted Finnan and Menne in breaching their fiduciary duties by concealing the [JAMS and Erpenbeck] Venture and the financial dependency of Finnan and Menne for a period of over four years." Consequently, PBNK contends that Crowe Chizek may be liable for damages caused by Finnan's and Menne's breaches of their fiduciary duties.

■ But as Crowe Chizek correctly points out, Kentucky law has never recognized a civil cause of action for aiding and abetting a breach of fiduciary duty. The closest analogue to such a claim is civil

conspiracy, which has been defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Smith v. Board of Education of Ludlow*, 264 Ky. 150, 94 S.W.2d 321, 325 (1936). In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act. *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky.1995).

In *Farmer v. City of Newport*, 748 S.W.2d 162 (Ky.App.1988), this Court referenced the *Restatement (Second) of Torts*, § 876 (1979), relative to "concert of action":

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*Id.* at 164.

Based upon these requirements, the Court in *Farmer* held that the plaintiffs in a product liability action could maintain a claim based on concert of action if they proved that the manufacturers acted tortiously, pursuant to a common design, or rendered substantial assistance to others to accomplish a tortious act, they could maintain a viable claim based on concert of action. *Id.*

However, in *James v. Wilson*, 95 S.W.3d 875 (Ky.App.2002), this Court dismissed a civil conspiracy claim in a school shooting case. The plaintiffs in *James* alleged that a group of students knew that a classmate had brought guns to the school and had heard him discussing his plans to open fire at the school, but they failed to alert authorities to the classmate's actions and threats. Consequently, the plaintiffs asserted that the students were liable as co-conspirators for participating in acts in furtherance of the alleged conspiracy. This Court disagreed, finding no evidence that the students' actions or inactions amounted to substantial assistance in accomplishing the school shooting. *Id.* at 897.

In both *Farmer v. City of Newport, supra,* and *James v. Wilson, supra,* the Court stated that mere negligence is not sufficient to support a claim for civil conspiracy. Rather, there must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act. In this case, there is no proof that Crowe Chizek or Brizendine were active, knowing participants in the misconduct by Finnan and Menne. At most, Crowe Chizek's negligence allowed the misconduct to go undetected for an extended period of time. But even when the evidence is viewed in the light most favorable to PBNK, there is no evidence that Crowe Chizek or Brizendine intended to give substantial assistance to Finnan's and Menne's misconduct. Consequently, the trial court properly dismissed PBNK's aiding and abetting claims.

 PBNK next argues that the trial court erred in dismissing its claims based upon the releases contained in the engagement letters, which set out the scope of Crowe Chizek's duties and the parties' respective responsibilities. In its engagement letters, Crowe Chizek stated that it

would perform the audit based upon generally accepted auditing standards using the financial statements provided by PBNK. "[These] standards require that we obtain reasonable, rather than absolute, assurance about whether the financial statements are free of material misstatement whether caused by error or fraud." The engagement letters further provided, "because of the importance of management's representations to an effective audit, the Corporation agrees to release Crowe Chizek and its personnel from any liability and costs relating to our services under this letter attributable to any misrepresentations by management contained in the representation letter."

In its responsive representation letters, PBNK agreed to the terms set out in Crowe Chizek's engagement letters, and further stated that it had disclosed all "[f]inancial records and related data," all "[m]inutes of stockholders, directors, and committees of directors, or summaries of actions of recent meetings," all "[f]inancial instruments with significant 'off balance sheet' risk of accounting loss to which the Company is a party," and all "[s]ignificant accounting estimates that are susceptible to changing materially as a result of an event or change in conditions that is reasonably possible of occurrence within one year." PNBK further stated that there were no "[u]nrecorded transactions," "fraudulent financial reporting or misstatements," or "[v]iolations or possible violations of laws or regulations whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss."

Despite these representations, Crowe Chizek contends that PBNK failed to disclose material facts which were or should have been within its knowledge. Crowe Chizek points out that Finnan and Menne disclosed their interests in JAMS on the "Company Affiliation" forms which they annually submitted to the PBNK board. Similarly, Crowe Chizek points to PBNK records showing that the board approved Finnan's and Menne's loans to Erpenbeck in 2001, that PBNK had concerns about Erpenbeck's financial condition, that other PBNK directors had expressed concerns about the close relationship between Finnan, Menne and Erpenbeck, and that PBNK knew of problems with its check cashing procedures before Erpenbeck began his check diversion scheme. Since PBNK failed to disclose these facts, Crowe Chizek maintains that the release precluded PBNK from claiming any damages arising from its services to PBNK during this period.

In its briefs to this Court, PBNK does not dispute Crowe Chizek's assertion that the records provided with the representation letters contained significant misrepresentations and material omissions. However, PBNK argues that Crowe Chizek had actual knowledge of the misconduct by Finnan, Menne and Erpenbeck through its auditing work for JAMS. Thus, PBNK contends that its losses were attributable to the independent negligence of Crowe Chizek and Brizendine. PBNK asserts that Crowe Chizek had actual knowledge of the extent of the relationship between Finnan, Menne and Erpenbeck through its representation of JAMS. PBNK also notes that it has produced an expert who states that Crowe Chizek breached its duties to PBNK by failing to discover and disclose this information as part of its auditing duties. PBNK argues that there is an issue of fact about whether the losses are attributable to its negligence or Crowe Chizek's. PBNK further argues that any omissions or negligence on its part do not bar its claims, but may be considered by the jury in determining the parties' comparative fault.

■ We agree. A release is a contract enforceable by its plain terms. *Abney v. Nationwide Mutual Insurance Co.,* 215 S.W.3d 699, 703 (Ky.2006). Agreements to exempt future liability for either ordinary or gross negligence are not invalid *per se*, but they are generally disfavored and are strictly construed against the parties relying upon them. *Hargis v. Baize,* 168 S.W.3d 36, 47 (Ky.2005). In the context of personal injury law, a pre-injury release will be upheld only if:

(1) it explicitly expresses an intention to exonerate by using the word "negligence;" or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision.

*Id., citing* 57A Am.Jur.2d, *Negligence* § 53.

While Kentucky has never applied this rule to claims for professional negligence, other jurisdictions have applied similar tests. In *Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP,* 832 So.2d 270 (Fla.App.2002), a panel of the Florida Court of Appeals held that an auditor's engagement letter must contain language specifically and clearly providing that the client agreed to release auditors from the auditor's own negligence. *Id.* at 272–73. Likewise, Texas requires that a release that relieves a party of liability from its own negligence in advance is valid only if it expressly so states. *See Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 719 (Tex.App.1994), *Dresser Industries, Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993), and *Ethyl Corp. v. Daniel Construction Co.,* 725 S.W.2d 705, 708 (Tex. 1987). *See also Chenud, Inc. v. KPMG Peat Marwick, L.L.P.,* 2001 WL 893989 (Tex.App.2001) (not designated for publication), which applied the rule to identical language in an auditor's engagement letter.

The releases in this case do not exempt Crowe Chizek from damages resulting from its own negligence, but only from damages "attributable to misrepresentations by management contained in the representation letter." PBNK has presented expert testimony that Crowe Chizek breached its duties by failing to discover and disclose Finnan's and Menne's misconduct which it learned during the course of its representation of JAMS. Crowe Chizek contends that this information was confidential and could not be disclosed without breaching its separate duties to JAMS. It also points out that Brizendine insisted that Finnan disclose his relationship with JAMS as soon as he discovered it. Be that as it may, we are satisfied that PBNK has presented sufficient evidence to show that its damages stemmed, at least in part, from Crowe Chizek's independent negligence rather than its own failures to discover and disclose the wrongdoing by Finnan, Menne and Erpenbeck. At least, there is a genuine issue of fact on this matter. Therefore, the releases contained in the representation letters do not absolutely preclude PBNK from recovering on its claims.

■ PBNK next argues that the trial court erred in finding that claims against Crowe Chizek and Brizendine for professional negligence and breach of fiduciary duty were barred by the one-year statute of limitations contained in KRS 413.245, which provides as follows:

Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract,

arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

■ The statute contains two periods of limitation. The first period begins one year from the date of the negligent act or omission (the date of occurrence), and the second period begins on the date of discovery if it is later in time. *Faris v. Stone,* 103 S.W.3d 1, 3 (Ky.2003). As explained in the recent opinion of the Kentucky Supreme Court in *Queensway Financial Holdings, Ltd. v. Cotton & Allen, P.S.C.,* 237 S.W.3d 141 (Ky.2007):

> The "occurrence" limitation period begins to run upon the accrual of the cause of action. [*Michels v. Sklavos,* 869 S.W.2d 728, 730 (Ky.1994).] The accrual rule is relatively simple: " '[A] cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred.... [T]he use of the word "occurrence" in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute.' " *Id.* at 730 (quoting *Northwestern Nat. Ins. Co. v. Osborne,* 610 F.Supp. 126, 128 (E.D.Ky.1985)) (alterations in original). Basically, "a 'wrong' requires both a negligent act and resulting injury. *Damnum absque injuria,* harm without injury, does not give rise to an action for damages against the person causing it." *Id.* at 731. The difficult question when applying the rule is usually not whether negligence has occurred but whether an " 'irrevocable non-speculative injury' " has arisen. *Id.* at 730 (quoting *North-*

> *western Nat. Ins. Co. v. Osborne,* 610 F.Supp. 126, 128 (E.D.Ky.1985)).

> The second or "discovery" limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered. *Id.* at 730. This rule is a codification of the common law discovery rule, *id.* at 732, and often functions as a "savings" clause or "second bite at the apple" for tolling purposes.

> The trial court and the Court of Appeals dealt with this case primarily under the discovery rule. They addressed the accrual issue, but did so in terms of the discovery rule. Citing *Perkins v. Northeastern Log Homes,* 808 S.W.2d 809 (Ky.1991), they held that a cause of action accrues when it is discovered or becomes discoverable. But under the professional malpractice statute of limitations, mere knowledge of some elements of a tort claim, such as negligence without harm, is insufficient to begin running the limitations period where the cause of action does not yet exist. *Michels,* 869 S.W.2d at 731–32. In this respect, the approach employed by the lower courts is improper under the professional malpractice statute, in that it collapses the accrual rule into the discovery rule when the two are analytically distinct. Admittedly, *Perkins* does say that a cause of action will not accrue until the plaintiff discovers or reasonably should have discovered that he is injured and that the injury was caused by the defendant, *id.* at 819, but in so doing it is describing how the common law discovery rule works under the general limitations statute to extend the tolling of the limitations period, which the general statute describes as running only upon accrual of the cause of action. The fact that the language employed in *Perkins* discusses a cause of action accruing under the discovery rule does not

remove the distinction between it and the accrual rule where the malpractice limitation statute expressly includes both.

The distinction between the two rules is important because, when properly applied, the accrual rule means that the limitations period does not even begin to run until the cause of action accrues. Until that time, no cause of action yet exists, meaning a lawsuit would be premature and should be dismissed.

Where a plaintiff claims that its suit was filed within the limitations period under both the accrual and discovery rules, as in this case, analyzing a claim only under the discovery rule does not make sense because, by its very nature, the discovery limitations period cannot begin to run until the accrual period begins.

*Queensway*, 237 S.W.3d at 147–48.

Crowe Chizek primarily relies on the discovery rule, asserting that PBNK knew or reasonably should have discovered the misconduct based upon facts within its own knowledge. Likewise, PBNK contends that the statute of limitations was tolled during the period of "continuous representation" of the bank by Crowe Chizek. But both of these arguments go to the running of the discovery limitations period. As pointed out in *Queensway*, the discovery limitations period cannot begin to run until the accrual period begins.

Addressing the discovery rule first, and then addressing the accrual rule in terms of discovery, further turns the required analysis on its head. Instead, the plaintiff's statute of limitations claim must be evaluated separately under both the accrual and discovery rules. Moreover, it makes sense to begin with the accrual limitation period.

*Id.* at 148.

The Court in *Queensway* went on to address when a cause of action for professional negligence accrues. The Court looked to three cases involving legal malpractice: *Michels v. Sklavos, supra; Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121 (Ky.1994); and *Meade County Bank v. Wheatley*, 910 S.W.2d 233 (Ky.1995). In each of these cases, the professional negligence occurred during the attorneys' representation of the clients in ongoing matters. And in each of these cases, the Court held that the cause of action did not accrue until the damages caused by the negligence became fixed and non-speculative upon resolution of the underlying matter.

In contrast to the facts of these other cases, the Court in *Queensway* noted that there was no underlying, continuing negotiation or lawsuit in which the allegedly negligent auditor was involved. Rather, the negligence occurred when the auditor underestimated the reserves necessary for an insurance company which Queensway was acquiring. And the injury which Queensway suffered became fixed and non-speculative when it purchased the insurance company based upon the auditor's prior misevaluation of the company's reserves. *Queensway*, supra at 149–50. Consequently, the Court concluded that Queensway's cause of action accrued upon its purchase of the overvalued insurance company.

As in *Queensway*, the current case involves a claim of professional negligence against an auditor where there was no continuing negotiation or lawsuit. But PBNK does allege breach of an ongoing duty—Crowe Chizek's failure to discover and disclose the misconduct by Finnan and Menne. Thus, the negligence, if any, occurred with the completion and delivery of each annual audit report. The injury, however, consists of the ongoing breaches of fiduciary duty by Finnan and Menne

and, more importantly, the damage which PBNK suffered as a result of those breaches.

Between 1998 and 2000, JAMS acquired mortgage indebtedness of nearly $3.9 million and was financially dependent on the rental payments from Erpenbeck to service this debt. But while Erpenbeck had other loans from PBNK, none of these loans were related to the JAMS transactions. The primary injury to PBNK was caused by Finnan's and Menne's actions in 2001 and early 2002. Due to their conflicts of interest involving JAMS, they continued to authorize loans to Erpenbeck to cover his troubled financial condition and his liabilities for the check kiting scheme. The damage from Finnan's and Menne's breaches of fiduciary duty did not become fixed and non-speculative until early April of 2002, when Brizendine compelled Finnan to disclose his relationships with JAMS and Erpenbeck to PBNK. Consequently, PBNK's cause of action for the alleged professional negligence accrued no earlier than that time.

Nevertheless, Crowe Chizek continues to argue that PBNK knew or should have known of the conflict of interest and the other misconduct by Finnan and Menne at a much earlier time. This may be true and may go to PBNK's comparative fault for its losses. But for purposes of the statute of limitations, PBNK's cause of action against Crowe Chizek for professional negligence did not accrue until the damage caused by the alleged negligence became fixed and non-speculative. Since we find that the cause of action did not accrue until at least April of 2002, therefore, PBNK's complaint against Crowe Chizek, filed March 24, 2003, was timely.

Consequently, PBNK is entitled to proceed to trial on its claims against Crowe Chizek for professional negligence. If PBNK proves its losses resulted from Crowe Chizek's negligence or breach of fiduciary duty, it may be entitled to compensatory damages.

 Crowe Chizek further argues that its contract with PBNK specifically limits the damages which PBNK can recover. The 2001 engagement letter incorporated a document called "Crowe Chizek Engagement Terms." In the section styled "BUSINESS RISK ALLOCATIONS," the engagement terms state, in pertinent part:

> With respect to any services or work product or this engagement generally, the liability of Crowe Chizek and its partners shall not exceed the fees Crowe Chizek receives for the portion of the work giving rise to liability nor include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity), and a claim for a return of fees paid shall be the exclusive remedy for any damages.

Crowe Chizek argues that this language precludes PBNK from recovering any damages other than the fees which it paid for the auditing services alleged to be negligently performed. The contract specifically excludes any consequential damages or punitive damages.

This Court held above that the release in the engagement letters exempts Crowe Chizek from damages "attributable to misrepresentations by management contained in the representation letter," but not from damages resulting from its own negligence. Our conclusion on this point is bolstered by the limitation of liability set forth in the engagement terms. The latter term would be unnecessary if the release exempted Crowe Chizek from liability for damages caused by its own negligence. But by the same token, the limitation of liability provision is subject to enforcement according to its plain terms.

But PBNK correctly points out that the provision was included only in the engagement letter signed on September 21, 2001. Crowe Chizek completed that audit in early January of 2002. Consequently, the limitation of liability provision only applies to damages arising from Crowe Chizek's negligence in performing the audit for fiscal year 2001. The vast majority of the alleged negligence in this case relates to Crowe Chizek's performance of the audits for fiscal years 1997 to 2000. Indeed, Brizendine discovered the relationship between JAMS and Erpenbeck shortly after the 2001 audit was completed. Consequently, the contract does not preclude PBNK from recovering consequential and punitive damages arising from the earlier audits.

■ However, we agree with Crowe Chizek that PBNK is not entitled to recover its losses arising from Erpenbeck's check conversion scheme. PBNK's losses occurred because it allowed Erpenbeck to cash checks which were clearly not payable to him. Thus, PBNK is liable for the conversion losses under KRS 355.3–420. *See also Tri–County National Bank v. GreenPoint Credit, LLC,* 190 S.W.3d 360, 362 (Ky.App.2006).

Article III of the Uniform Commercial Code only governs PBNK's liability to the authorized payee and payor of the checks. It does not preclude a bank from asserting a claim against other parties who may have contributed to the conversion. PBNK argues that it could have disassociated itself from Finnan, Menne and Erpenbeck before the check diversion scheme started if Crowe Chizek had disclosed the relationship between JAMS and Erpenbeck at an earlier time.

While this may meet the "but for" test of causation, PBNK presents no evidence that Erpenbeck's check diversion scheme was a foreseeable result of Crowe Chizek's negligence. PBNK concedes that Crowe Chizek's auditing duties did not place it in a position to discover Erpenbeck's check conversion scheme. Furthermore, there is no evidence that Finnan, Menne or JAMS was involved in that misconduct. So Crowe Chizek could not have discovered the scheme through its auditing work for JAMS. Thus, Erpenbeck's check diversion scheme was not a foreseeable consequence of any negligence by Crowe Chizek. Rather, Erpenbeck's criminal conduct and PBNK's own negligence in cashing the checks were superseding causes of the injury. *See NKC Hospitals, Inc. v. Anthony,* 849 S.W.2d 564, 568 (Ky.App.1993).

■ The issue of punitive damages is a much more difficult question. Crowe Chizek argues that PBNK has failed to present evidence sufficient to support an award of punitive damages in this case. Punitive damages are given to the plaintiff over and above the full compensation for his injuries, for the purpose of punishing the defendant, teaching him not to do it again, and deterring others from following his example. *Hensley v. Paul Miller Ford, Inc.,* 508 S.W.2d 759, 762 (Ky.1974). For these reasons, KRS 411.184 authorizes an award of damages only upon a showing by clear and convincing evidence that the defendant acted with fraud, oppression or malice. We have previously found no evidence that Crowe Chizek intended to give substantial assistance to Finnan's and Menne's misconduct. Thus, punitive damages are not available on these grounds.

■ However, the Kentucky Supreme Court has held that, under the common law, punitive damages may be awarded on a showing of gross negligence, and that KRS 411.184 cannot constitutionally exclude recovery of punitive damages on this basis. *Williams v. Wilson,* 972 S.W.2d 260, 264 (Ky.1998). "Gross negli-

gence" is a wanton or reckless disregard for the lives, safety or property of others. *See Phelps v. Louisville Water Co.,* 103 S.W.3d 46, 51–52 (Ky.2003). The threshold for the award of punitive damages is whether the misconduct was "outrageous" in character, not whether the injury was intentionally or negligently inflicted. *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 389 (Ky.1985). In a case where gross negligence is used as the basis for punitive damages, gross negligence has the same character of outrage justifying punitive damages as willful and malicious misconduct in torts where the injury is intentionally inflicted. Just as malice need not be expressed and may be implied from outrageous conduct, so too may wanton or reckless disregard for the rights of others be implied from the nature of the misconduct. *Id.* at 389–90.

PBNK does not argue that Crowe Chizek had an inherent conflict of interest in its separate roles as auditor for the bank and JAMS. Rather, it contends that Crowe Chizek should have discovered the conflict of interest during the course of its auditing work for JAMS. Thus, PBNK argues that Crowe Chizek's breach of its duties to the bank was not merely negligent, but was in reckless disregard for its rights. It further argues that Crowe Chizek's failure to discover and disclose the wrongdoing amounted to a concealment, causing damages independent of those flowing from the wrongful acts themselves. *Hardaway Management Co. v. Southerland,* 977 S.W.2d 910, 917 (Ky.1998). Therefore, PBNK asserts that Crowe Chizek's negligence was gross, thus permitting an award of punitive damages.

 We agree. Where the potential for harm is great and directly evident, Kentucky has found that a reckless disregard for the rights of others may be inferred from the negligent act. *See Horton*

*v. Union Light, supra* at 387 (a gas company could be found grossly negligent for its failure to adopt procedures to detect and contain gas leaks); *Phelps v. Louisville Water Co., supra* at 52 (employer's failure to adopt procedures to protect the lives and safety of its employees and concealment of hazardous conditions may be considered grossly negligent); and *Gersh v. Bowman,* 239 S.W.3d 567, 572 (Ky.App. 2007) (driver who drives well in excess of speed limit on a curvy road may be considered to be grossly negligent). However, there is very little case law about what constitutes gross negligence with regard to professional negligence. But a finding of gross negligence clearly requires more than a failure to exercise ordinary care. It requires a finding of a failure to exercise even slight care such as to demonstrate a wanton or reckless disregard for the rights of others. *Phelps, supra* at 51–52. *See also Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 655 n. 33 (Ky.2007)

In this case, PBNK's expert, David Wallace, states that Crowe Chizek's failure to conduct detailed loan credit reviews on loans to Erpenbeck was a gross violation of generally accepted auditing standards and generally accepted accounting practices. Likewise, he contends that Crowe Chizek's failure to discover the fraudulent transactions in JAMS' records and disclose them to PBNK amounted to a serious breach of its fiduciary duties. And finally, he states that this information should have placed Crowe Chizek on notice of the serious conflict of interest between its duties to PBNK and to JAMS. Under the circumstances, we conclude that PBNK has submitted sufficient evidence for a jury to decide whether Crowe Chizek was grossly negligent.

 Finally, PBNK argues that the trial court erred in granting summary

judgment on the application of KRS 271B.8–300(3), which provides as follows:

In discharging his duties a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:

(a) One (1) or more officers or employees of the corporation whom the director honestly believes to be reliable and competent in the matters presented;

(b) Legal counsel, public accountants, or other persons as to matters the director honestly believes are within the person's professional or expert competence; or

(c) A committee of the board of directors of which he is not a member, if the director honestly believes the committee merits confidence.

Based on this statute, PBNK contends that the members of its board reasonably relied on the reports issued by Crowe Chizek. PBNK states that it may assert this reasonable reliance as a defense to any comparative fault and to Crowe Chizek's third-party claims against PBNK's directors.

We agree to the extent that KRS 271B.8–300 is relevant to determine the standard of care which PBNK's directors were obliged to exercise. Thus, the statute is applicable (but not necessarily controlling) to any issues of comparative fault and to Crowe Chizek's third-party claims against PBNK's directors. However, PBNK cites no authority that KRS 271B.8–300 may be used offensively to support a separate cause of action against Crowe Chizek. To this extent, therefore, the trial court properly granted summary judgment dismissing PBNK's cause of action based on this statute.

In conclusion, we agree with PBNK that summary judgment was not appropriate on its claims for professional negligence and breach of fiduciary duty as these claims were not barred by the statute of limitations or by the releases contained in the contracts between PBNK and Crowe Chizek. Furthermore, the contracts do not bar PBNK's claims for consequential and punitive damages arising from Crowe Chizek's negligence prior to the 2001 audit. PBNK is entitled to proceed to trial on these issues. However, we find that summary judgment was appropriate on PBNK's claims for aiding and abetting liability, for damages arising from Erpenbeck's conversion of checks not payable to him, and on PBNK's asserted cause of action under KRS 271B.8–300, but that statute may be relevant to any defenses based on comparative fault and as a defense to Crowe Chizek's third-party claims.

Accordingly, the summary judgments entered by the Boone Circuit Court are affirmed in part, reversed in part, and remanded for further proceedings as set forth in this opinion.

ALL CONCUR.