PEOPLES BANK OF NORTHERN KENTUCKY, INC; PBNK, Inc., f/k/a PBNK Bancorporation of Northern Kentucky, Inc.; Mark G. Arnzen; John S. Domaschko; Michael J. Gibbons; John M. Griffin; The Estate of Paul W. Hemmer, Sr.; James H. Huff; Thomas M. Mayer; Gary J. Menne; Joseph A. Milburn; Michael D. O'Brien; William R. Remke; Michael L. Robinson; E. Ted Roeding; John P. Schmitz; Dwayne V. Smith; Thomas J. Sumerel and John A. Yeager, Appellants

v.

CROWE HORWATH, f/k/a Crowe Chizek and Co., f/k/a Eskew & Gresham, PSC, Appellee.

and

Crowe Horwath, LLP and William B. Brizendine, Cross–Appellants

v.

Peoples Bank of Northern Kentucky, Inc; PBNK, Inc., f/k/a PBNK Bancorporation of Northern Kentucky, Inc; Mark G. Arnzen; John S. Domaschko; Michael J. Gibbons; John M. Griffin; The Estate of Paul W. Hemmer, Sr.;

James H. Huff; Thomas M. Mayer; Gary J. Menne; Joseph A. Milburn; Michael D. O'Brien; William R. Remke; Michael L. Robinson; E. Ted Roeding; John P. Schmitz; Dwayne V. Smith; Thomas J. Sumerel; John A. Yeager and Arnzen, Wentz, Malloy, Laber & Storm, PSC, f/k/a Arnzen, Party & Wentz, PSC, Cross–Appellees.

Nos. 2010–CA–001709–MR, 2010–CA–001788–MR.

Court of Appeals of Kentucky.

July 13, 2012.

Discretionary Review Denied by Supreme Court Feb. 13, 2013.

Ronald R. Parry, Covington, KY, for appellants/cross-appellees Peoples Bank of Northern Kentucky, Inc. and PBNK, Inc., f/k/a PBNK Bancorporation of Northern Kentucky, Inc.

Mickey T. Webster, Henry E. Kinser, Lexington, KY, for appellees/cross-appellants Crowe Horwath, LLP and William B. Brizendine.

Before CLAYTON, STUMBO and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

In this bank auditor malpractice case, Peoples Bank of Northern Kentucky, Inc. and PBNK, Inc., f/k/a PBNK Bancorporation of Northern Kentucky, Inc. and members of its board of directors (collectively referred to as PBNK) appeal from a judgment of the Boone Circuit Court entered following a jury verdict in favor of Crowe Horwath, LLP, and William B. Brizendine. PBNK's arguments are summarized as follows: (1) it was reversible error to include

criminal third-party defendants in an instruction to the jury that criminal wrongdoers caused PBNK's losses and include them in an apportionment instruction; (2) PBNK's check conversion loss should have been determined by the trial court and excluded from its damage claim; (3) it was error to permit expert testimony regarding the duties of PBNK's board of directors; and (4) a directed verdict entered in Brizendine's favor was based on an improper legal theory and, if remand is ordered, the directed verdict should be set aside. Although Crowe and Brizendine filed cross-appeals, our resolution of PBNK's appeal renders the cross-appeals moot.

## PROCEDURAL AND PRETRIAL HISTORY

This case has previously been before this Court resulting in a published opinion, *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and Co. LLC,* 277 S.W.3d 255 (Ky.App.2008). To the extent relevant to this appeal, we again reiterate the facts.

From 1991 through 2002, John O. Finnan served as PBNK's president and chief executive officer and Marc Menne worked as chief commercial loan officer. Both Finnan and Menne were also members of the board of directors.

In 1996, Eskew and Gresham, PSC, became the accountants and auditors for PBNK. As a partner with Eskew, Brizendine had primary responsibility for providing independent accounting and auditing services to PBNK. After Crowe acquired the assets of Eskew and Gresham in 1998, Brizendine became a partner with Crowe and continued to be primarily responsible for providing services to PBNK.

PBNK's largest loan customer was real estate developer William Erpenbeck and the entities he controlled (collectively "Erpenbeck"). Finnan and Menne supervised Erpenbeck's loan activities for PBNK and the three developed a close personal and business relationship.

In 1997, Finnan, Menne and their spouses, created JAMS Properties, LLP. JAMS purchased homes and condominiums built by Erpenbeck at cost, but created fictitious purchase contracts stating much higher costs. Prior to the purchase of the properties, false loan applications were submitted to out-of-town banks and mortgages secured. The excess loan proceeds were divided between Erpenbeck and JAMS. Erpenbeck rented the properties from JAMS, which used the rental payment to pay the mortgages. By 2000, JAMS had total mortgage indebtedness of nearly 3.9 million dollars.

In 1998, Finnan and Menne hired Crowe to perform tax services for JAMS. Crowe prepared the tax returns through 2001 and JAMS maintained its bank accounts with PBNK.

In January 2000, Erpenbeck was unable to make rental payments to JAMS and, consequently, JAMS was unable to make the mortgage payments. Erpenbeck began to deposit checks into his PBNK account that were payable to other individuals, entities or banks. In early 2001, Erpenbeck also caused a kite of insufficient funds checks to be conducted among various accounts, including his account at PBNK. When the kiting scheme was discovered by another bank, Erpenbeck's PBNK account became substantially overdrawn. Finnan and Menne authorized additional loans to Erpenbeck to cover these overdrafts.

In April of 2002, Finnan informed Brizendine of Erpenbeck's check conversion and check kiting schemes. Upon further review, Brizendine discovered the relationship among Erpenbeck, Finnan, Menne and JAMS. He advised Finnan to inform

the PBNK board of the relationship and potential conflict of interest. Upon learning of the relationship, the PBNK board notified authorities and hired an independent law firm to conduct an internal investigation. The investigation revealed the extent of the dealings between Erpenbeck, Finnan, Menne and JAMS, the extent of the check kiting and check conversion schemes, the post–2001 loans to Erpenbeck, and Erpenbeck's default on the loans from PBNK and other banks. Subsequently, Finnan and Menne resigned.

Customers withdrew funds from PBNK and, eventually, PBNK ceased operations in November of 2002 and sold its remaining assets at a substantial loss. Erpenbeck was eventually convicted on numerous federal bank fraud charges. Finnan and Menne later pleaded guilty to other federal bank fraud charges.

In March 2003, PBNK filed this action against Crowe and Brizendine. The complaint, as later amended, asserted causes of action for: (1) aiding and abetting Finnan's and Menne's breaches of fiduciary duty; (2) aiding and abetting Finnan's and Menne's breaches of KRS 286.3–065; (3) professional negligence; (4) breach of fiduciary duty; and (5) violation of KRS 271B.8–300. PBNK sought both compensatory and punitive damages.

Crowe filed a third-party complaint against Erpenbeck, Finnan and Menne.[1] Both PBNK and Crowe alleged that the criminal third-party defendants were primarily liable for PBNK's losses. Although PBNK did not join the criminal wrongdoers as parties, in its complaint against Crowe it alleged their criminal activities.

For reasons not relevant to this appeal, this Court held that summary judgment was appropriate on PBNK's claims for aiding and abetting liability. This Court also held that summary judgment was proper for damages from Erpenbeck's conversion of checks, and PBNK's asserted cause of action under KRS 271B.8–300. However, this Court held that the trial court erroneously issued summary judgment on PBNK's claims for professional negligence and breach of fiduciary duty. Additionally, it was held that PBNK's claims for consequential and punitive damages arising from Crowe's negligence prior to the 2001 audit were not precluded by the contract between PBNK and Crowe. *Peoples Bank of Northern Kentucky, Inc.*, 277 S.W.3d at 269.

After our Supreme Court denied discretionary review, the case proceeded to trial on the issues regarding PBNK's claims that Crowe and Brizendine were negligent and breached their fiduciary duties. The criminal wrongdoers did not participate in the trial.

### THE TRIAL

Both parties introduced extensive evidence at trial. However, our discussion of the evidence is limited to that necessary to address the issues presented. Because PBNK does not challenge the sufficiency of the evidence to support the jury's verdict and alleges only errors of law, we concisely state the evidence.

It was established that Crowe was responsible for conducting annual audits of PBNK's financial statements and Brizendine was at all times Crowe's employee and agent. PBNK presented expert testimony that because of the significant financial risk to PBNK, Crowe should have

---

1. The third-party complaint named other individuals including the board of directors, PBNK's general counsel, an Erpenbeck employee, Erpenbeck's father, and PBNK's general counsel. For reasons not relevant to this appeal, some of the third-party defendants were dismissed prior to trial.

earlier disclosed the personal business relationship between Erpenbeck, Finnan and Menne and that Crowe acted in a grossly negligent manner in performing its auditing work. PBNK introduced evidence that its directors did not have actual knowledge of the business relationship between Erpenbeck, Finnan and Menne until the spring of 2002 when Crowe advised Finnan to disclose his personal business relationship with Erpenbeck.

At the conclusion of PBNK's case, Brizendine and Crowe moved for a directed verdict. The trial court directed a verdict in Brizendine's favor regarding any claims against him individually but denied a directed verdict as to PBNK's claims against Crowe.

Crowe introduced evidence that it performed its work in accordance with applicable standards and that any loss suffered was caused by Erpenbeck, Finnan, and Menne. Over PBNK's objection, Crowe presented Dr. Haywood as an expert on the standard that the directors were required to observe while serving on PBNK's board and his opinion that the directors violated those standards. Crowe introduced additional evidence that it was common for bank officers and directors to have business relationships with customers and that documents existed, which if reviewed by the directors, would have disclosed the basic facts regarding Erpenbeck's, Finnan's, Menne's and JAMS's business dealings. Further, although the directors knew Erpenbeck sold real estate to Finnan and Menne at cost and of Erpenbeck's financial troubles in 2000 or 2001, PBNK did not report that information to Crowe for use in its annual audit.

## THE TRIAL COURT PROPERLY INSTRUCTED THE JURY THAT ERPENBECK, FINNAN AND MENNE CAUSED LOSSES TO PBNK

■ Jury Instruction No. 9 stated:

The Court finds that A. William Erpenbeck, John Finnan and Marc Menne breached their duties to Peoples Bank and that said breaches caused losses to Peoples Bank.

Instruction No. 14 was an apportionment instruction that included Erpenbeck, Finnan and Menne.

PBNK argues that apportionment was not an issue in this case and, therefore, the jury should not have been instructed that losses to PBNK were caused by Erpenbeck, Finnan and Menne. It contends that the court's instructions were confusing and misleading on loss causation because the jury could have reasonably believed that Crowe's conduct, even if negligent, could not have been a substantial factor in causing PBNK's losses.

PBNK vehemently argues that Instruction No. 9 would not have been submitted absent the trial court's erroneous determination that the third-party defendants should be included in an apportionment instruction. Consequently, both parties have skillfully briefed whether an apportionment instruction is appropriate where third-party defendants engaged in criminal conduct contributing to the plaintiff's losses.

PBNK points out that our apportionment statute, KRS 411.182, did not eliminate common law indemnity. *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775 (Ky.2000). It submits that under Kentucky law, when one tortfeasor commits an intentional tort and another negligently performs a duty to protect another from the other tortfeasor's intentional act, it is an indemnity case and not an apportionment case. Again, PBNK cites the *Degener* opinion and quotes the following passage:

To summarize, apportionment of liability arose from statutory provisions permitting contribution and several liability among joint tortfeasors in pari delicto. It has no application to the common law right of a constructively or secondarily liable party to total indemnity from the primarily liable party with whom he/she is not in pari delicto. Appellants' reliance on *Dix & Assocs. Pipeline Contractors, Inc. v. Key, supra* [799 S.W.2d 24 (Ky.1990)], *Prudential Life Ins. Co. v. Moody,* Ky., 696 S.W.2d 503 (1985), *Roman Catholic Diocese of Covington v. Secter,* Ky.App., 966 S.W.2d 286 (1998), *Continental Marine, Inc. v. Bayliner Marine Corp.,* Ky.App., 929 S.W.2d 206 (1996), and *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc., supra* [842 S.W.2d 873 (Ky.App.1992)], for the proposition that the advent of apportioned liability has eliminated the common law right to indemnity is misplaced. Although there are references in some of those opinions to claims for "contribution and/or indemnity," none of those cases involved claims for indemnity. More importantly, none of those cases specifically hold that the advent of apportioned liability between joint tortfeasors in pari delicto has eliminated the common law right to indemnity vested in one who is only constructively or secondarily liable to a plaintiff.

*Id.* at 780–781.

Crowe counters that although *Degener* holds that common law indemnity is still viable in this jurisdiction, it does not preclude apportionment when joint tortfeasors are not in pari delicto. It heavily relies on the express language in KRS 411.182, which provides for apportionment in "all tort actions ... involving fault of more than one (1) party to the action, including third-party defendants[.]"

▮ Despite the apparent ambiguity in our case law and the parties' well written arguments, we conclude that the issue presented does not depend upon the application of the apportionment statute. As explained in *Owens Corning Fiberglas Corp. v. Parrish,* 58 S.W.3d 467, 471 n. 5 (Ky. 2001) (citing KRS 411.182), apportionment is not a substantive cause of action itself but depends on an initial finding of fault. Without fault, there is no fault to allocate. Even if the trial court committed error by providing the apportionment instruction, any such error was harmless as it was cured by the verdict in this matter. *Davis v. Lucas,* 432 S.W.2d 411 (Ky.1968). Therefore, our inquiry turns to whether Instruction No. 9 was improper. We conclude that regardless of whether liability could be apportioned, Instruction No. 9 was in conformity with the evidence submitted and the law.

In *CSX Transp., Inc. v. Begley,* 313 S.W.3d 52, 60 (Ky.2010), our Supreme Court explained that:

The purpose of instructing a jury is to guide jurors in applying the law correctly to the facts in evidence.... Kentucky state courts take a "bare bones" approach to jury instructions, however, leaving it to counsel to assure in closing arguments that the jury understands what the instructions do and do not mean. A proper instruction correctly advises the jury what it must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof on that issue. Regardless of what form jury instructions take, they must state the applicable law correctly and neither confuse nor mislead jurors. A trial court has a duty to give a correct instruction when a party offers an erroneous or misleading instruction on a proper issue. (footnotes and internal quotations omitted).

We are not convinced that Instruction No. 9 was the result of the trial court's finding that liability could be apportioned among Erpenbeck, Finnan and Menne. It was based on the evidence, PBNK's theory of liability and damages, and Crowe's defense.

To establish negligence and breaches of fiduciary duties by Crowe and Brizendine, PBNK introduced evidence that Erpenbeck, Finnan and Menne committed criminal acts that caused losses to PBNK that could have been avoided if Crowe and Brizendine had earlier informed PBNK about their relationship. Additionally, evidence was introduced that PBNK incurred losses caused by Erpenbeck's check conversion scheme and that Finnan and Menne approved the Erpenbeck overdrafts at PBNK resulting from Erpenbeck's check kiting scheme. Crowe presented evidence that Erpenbeck, Finnan and Menne were the proximate causes of PBNK's losses.

Instruction No. 9 was not confusing or misleading. The evidence and legal theories submitted by PBNK and Crowe supported the instruction that informed the jury that Erpenbeck, Finnan and Menne breached their duties owed to PBNK and that their breaches caused losses to PBNK. We conclude there was no error.

## THE TRIAL COURT PROPERLY INSTRUCTED THE JURY THAT THE BANK'S AGENTS CAUSED LOSSES TO PBNK IN CONNECTION WITH THE CHECK CONVERSIONS

■ In the first appeal, this Court addressed whether PBNK could recover its losses arising from Erpenbeck's check conversion scheme. We held it could not and explained:

[W]e agree with Crowe Chizek that PBNK is not entitled to recover its losses arising from Erpenbeck's check conversion scheme. PBNK's losses occurred because it allowed Erpenbeck to cash checks which were clearly not payable to him. Thus, PBNK is liable for the conversion losses under KRS 355.3–420. *See also Tri–County National Bank v. GreenPoint Credit, LLC,* 190 S.W.3d 360, 362 (Ky.App.2006).

Article III of the Uniform Commercial Code only governs PBNK's liability to the authorized payee and payor of the checks. It does not preclude a bank from asserting a claim against other parties who may have contributed to the conversion. PBNK argues that it could have disassociated itself from Finnan, Menne and Erpenbeck before the check diversion scheme started if Crowe Chizek had disclosed the relationship between JAMS and Erpenbeck at an earlier time.

While this may meet the "but for" test of causation, PBNK presents no evidence that Erpenbeck's check diversion scheme was a foreseeable result of Crowe Chizek's negligence. PBNK concedes that Crowe Chizek's auditing duties did not place it in a position to discover Erpenbeck's check conversion scheme. Furthermore, there is no evidence that Finnan, Menne or JAMS was involved in that misconduct. So Crowe Chizek could not have discovered the scheme through its auditing work for JAMS. Thus, Erpenbeck's check diversion scheme was not a foreseeable consequence of any negligence by Crowe Chizek. Rather, Erpenbeck's criminal conduct and PBNK's own negligence in cashing the checks were superseding causes of the injury. *See NKC Hospitals, Inc. v. Anthony,* 849 S.W.2d 564, 568 (Ky.App.1993).

*Peoples Bank of Northern Kentucky, Inc.,* 277 S.W.3d at 267.

On remand, the parties agreed that PBNK could not recover losses from the check conversion scheme but disputed how to apply this Court's holding and the amount of the losses caused by the scheme. At pretrial, PBNK argued that all evidence of Erpenbeck's check conversion scheme should be excluded and the check conversion losses determined by the court. Crowe maintained that although PBNK could not recover losses incurred as a result of the check conversion scheme, the existence of the scheme and its economic consequences to PBNK were relevant to causation, the value of PBNK and its sale. The court ordered the parties to submit evidence regarding the amount of loss in value resulting from the check conversion scheme, which the jury could consider when determining whether Crowe's conduct was a substantial factor in the losses suffered by PBNK.

At trial, evidence was introduced regarding the check conversion scheme and the losses incurred as result of the scheme. Instruction No. 5 stated as follows:

> Peoples Bank of Northern Kentucky, Inc. is not entitled to recover its losses from William Erpenbeck's misdirected and diverted checks because it or its agents allowed Erpenbeck to cash checks which were clearly not payable to him. William Erpenbeck's behavior regarding checks not payable to him was not a foreseeable consequence of any negligence by Crowe Horwath.

In Question No. 2, the jury was asked whether the bank's directors failed to perform their duties and if such failure was a substantial factor in causing loss to PBNK. PBNK alleges that when read in conjunction with Instruction No. 5, Question No. 2 was misleading and confusing because the jury could have determined that the directors were the agents referred to in Instruction No. 5. It maintains that because its losses were eliminated from the bank's damage claim, the instruction was unnecessary.

As in its initial argument, PBNK argues error that could not have been detrimental to its claims. Instruction No. 5 was an instruction regarding damages. Because the jury found in Crowe's favor, the damage issue was not reached.

Moreover, there is nothing confusing or misleading regarding the instruction. The evidence regarding the converted check scheme was presented to prove that the converted checks were the cause of PBNK's undercapitalization and ultimate closing. Although the parties disagreed regarding the amount of loss incurred as a result of the scheme, the parties agreed that PBNK could not recover losses from the converted check scheme and, therefore, Instruction No. 5 was consistent with, and necessitated by, the evidence. The use of the word "agents" instead of "tellers" is inconsequential. Therefore, we conclude that Question No. 2 was not confusing or misleading when read in conjunction with Instruction No. 5. *Begley,* 313 S.W.3d at 60.

## DR. HAYWOOD'S TESTIMONY WAS PROPERLY ADMITTED

KRE Rule 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

A trial court's ruling on the admission of expert testimony will not be disturbed absent an abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 578 (Ky.2000).

PBNK does not challenge Dr. Haywood's qualifications but argues that expert testimony was not required because KRS 271B.8–300 sets forth a bank director's duties, and it is a matter within the common knowledge of a jury. We disagree.

KRS 271B.8–300 provides general guidelines regarding a director's duties. However, Dr. Haywood described the specific duties required by bank directors and, specifically, the PBNK directors. He testified that the directors had a duty to supervise Finnan's and Menne's lending activities, establish internal control and auditing, and review and respond to audit and examination reports. In addition to ensuring that the board minutes were complete and accurate, the directors had the basic function of placing PBNK's interests before their own.

We agree with the Court in *Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer,* 886 F.Supp. 658, 669 (N.D.Ind.1995), that the "nature and scope of the duties owed a financial institution by its directors is a matter beyond the ken of the average juror, or the court." The average juror has no experience with the duties of a bank director including supervising management, establishing and monitoring internal control and a suitable internal audit program, supervision of lending activities, interacting with outside auditors, board procedures, and placing the bank's interest above personal interest. The trial court did not abuse its discretion when it admitted Dr. Haywood's testimony.

## ANY ERROR COMMITTED BY DIRECTING A VERDICT IN BRIZENDINE'S FAVOR WAS HARMLESS

PBNK argues that it was error to direct a verdict in Brizendine's favor on the basis of vicarious liability. It requests that if this Court reverses on the grounds asserted and remands the matter for a new trial, Brizendine be included as a defendant.

For the reasons stated, we conclude there was no error. The jury was not informed that Brizendine was dismissed from the action and was properly instructed that Crowe was accountable for the conduct of its CPAs, including Brizendine. The jury considered his conduct when it determined that Crowe did not breach its duty of care and was not a substantial factor in causing PBNK's losses.

### CONCLUSION

After a review of the record and the arguments presented by counsel, we conclude that there was no error. The statement by the Court in *Callis v. Owensboro–Ashland Co.,* 551 S.W.2d 806, 808 (Ky.App. 1977) provides an apt conclusion:

It is clear that the Plaintiffs had their day in court. A competent jury decided the matter. To return this matter for a new trial would permit a possible distortion of the true jury verdict, and in effect give the Plaintiffs a second day in court after the matter had been fully litigated and finally decided.

Based on the foregoing, the judgment of the Boone Circuit Court is affirmed.

ALL CONCUR.