CSX TRANSPORTATION, INC., Appellant,

v.

John X. BEGLEY, Appellee.

No. 2008–SC–000643–DG.

Supreme Court of Kentucky.

May 20, 2010.

James E. Cleveland, III, James Wade Turner, Alexander C. Ward, Huddleston Bolen LLP, Ashland, KY, Counsel for Appellant, CSX Transportation, Inc.

Thomas Ira Eckert, Hazard, KY, John Oaks Hollon, Alva A. Hollon, Jr., Sams & Hollon, P.A., Jacksonville, FL, Counsel for Appellee, John X. Begley.

David T. Klapheke, Boehl, Stopher & Graves, LLP, Louisville, KY, Counsel for Amicus Curiae, Association of American Railroads ("AAR").

### OPINION OF THE COURT

This appeal concerns an action filed by John X. Begley under the Federal Employers Liability Act (FELA).[1] Begley claimed that he developed osteoarthritis in his knees and hips due to his work for CSX Transportation, Inc. as a brakeman/conductor. The Court of Appeals affirmed a Perry Circuit Court judgment that awarded Begley damages following a favorable jury verdict. We granted CSX's motion for discretionary review to consider whether the Court of Appeals erred by affirming the trial court's refusal to give tendered instructions concerning proximate cause, foreseeability of harm, nontaxability of damages, and reduction of damages to present value. Having considered the evidence and the parties' arguments, we conclude that the trial court erred in some respects but committed no error that compels reversal.

Begley was born in 1942. He worked for CSX from 1970 to 1998, when he retired due in part to hip and knee pain that he had experienced since the mid–1990s. Physicians attributed his symptoms to osteoarthritis, a degenerative condition. During the initial twenty years of Begley's twenty-eight-year employment, his job required him to jump from slow-moving trains onto coarse gravel along the tracks, to perform various activities, and then to get back on the trains. The maneuvers were known as moving mounts and dismounts. He stated that he performed them anywhere from five to twenty times per day on trains that were moving at five to six miles per hour and sometimes faster. CSX discontinued the practice in 1990.

Begley filed this FELA action in 2003. He alleged that CSX failed to provide a safe work environment and that work-related cumulative trauma contributed to causing his arthritic condition. The claim sought damages only for past and future pain and suffering.

Dr. Chaney, a family physician, diagnosed and treated Begley for severe osteoarthritis in his knees and hips. He informed Begley early in 2003 that the condition was work-related. Dr. Chaney described the condition as a degenerative process that occurs with aging but is accelerated by factors such as obesity and repetitive trauma. He opined that the practice of mounting and dismounting trains

---

1. 45 U.S.C. §§ 51–60.

that were traveling at five to six miles per hour accelerated the arthritic process, contributing to the development of Begley's osteoarthritis. Informed on cross-examination that the practice ended in 1990, he responded affirmatively to statements by defense counsel that the practice could not accelerate anything for which he treated Begley in 1997 and 1998 and that he could no longer "make this causation relationship." He testified on re-direct, however, that the moving mounts and dismounts performed until 1990 were "a contributing factor to [Begley's] osteoarthritis."

Begley also offered testimony from Tyler Kress, Ph.D., a safety engineer who specialized in human biomechanics. Dr. Kress testified that force, posture, repetition/frequency, cold, and vibration are risk factors for microtrauma, which eventually causes tissue damage and produces what is known as a cumulative trauma or "wear and tear" injury. He stated that extensive scientific literature, some dating to the 1970s, discussed the risk factors for such injuries. Dr. Kress characterized as "poor job practice," a requirement that workers mount and dismount moving equipment from terrain such as mud or ballast (i.e., coarse gravel), explaining that the practice would put them at risk for both acute and cumulative trauma injuries.

The defense focused on the issues of negligence and causation. CSX's former head of safety testified concerning precautions the company took to prevent injuries to employees. He stated that mounting and dismounting moving equipment was an industry practice conducted safely at CSX and that the company led the industry in discontinuing the practice in 1990.

Dr. Love, an orthopedic specialist, concluded from examining Begley twice that the degenerative condition in his knees and hips was both severe and disabling but did not result from work-related repetitive trauma or overuse. He reported that he did "not believe [Begley's] work in any way contributed to his condition." Dr. Love testified subsequently that he had seen CSX's training films showing mounts and dismounts. Having done so, he thought that performing the maneuvers with a slow-moving train was actually less stressful on the knees and hips from a biomechanical standpoint than performing them with a stationary train. He considered the maneuvers to be safe with respect to the risk of knee and hip injuries but to be unsafe with respect to the risk of foot and ankle injuries. Dr. Love attributed Begley's knee and hip condition to a natural deterioration of the joints and cartilage due to age and perhaps also to an autoimmune condition known as ankylosing spondylitis. He insisted that Begley's work neither caused nor contributed to his present condition, which would be identical had he never performed a moving mount or dismount.

CSX tendered instructions at the close of proof concerning proximate cause, foreseeability of harm, reduction of damages to present value, and non-taxability of damages, all of which the trial court refused. The jury returned a verdict of $250,000.00 and apportioned fault equally to CSX and Begley, after which the trial court entered judgment for Begley in the amount of $125,000.00. CSX appealed.

## I. The Federal Employers' Liability Act

The death and maiming of thousands of interstate railroad workers during the late 1800s provided the impetus for 45 U.S.C. §§ 51–60, the Federal Employers' Liability Act ("FELA").[2] Congress enacted the FELA in 1908 to provide a uniform

---

**2.** See *Urie v. Thompson*, 337 U.S. 163, 181, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

method of compensating injured railroad workers and their survivors.[3] The FELA is not a type of workers' compensation statute and does not ensure benefits for all work-related injuries.

■ The FELA bases a cause of action on employer negligence but departs from common-law tort principles by prohibiting employers from exempting themselves through contract;[4] by eliminating certain common-law tort defenses, such as the fellow servant rule[5] and assumption of risk;[6] and by limiting the effect of contributory negligence.[7] Although the FELA authorizes a federal cause of action, Congress gave state and federal courts concurrent jurisdiction over FELA claims.[8] The FELA is broad, remedial legislation and is to be construed liberally in order to accomplish its humanitarian purpose.[9]

45 U.S.C. § 51 provides, in relevant part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

■ The FELA preempts all state law concerning an interstate railroad's liability for an employee's death or personal injury due to the railroad's negligence.[10] Thus, the substantive law that governs a FELA action is federal, regardless of whether it is brought in state or federal court.[11] Federal decisional law governs what constitutes negligence in a FELA claim[12] and requires a plaintiff to prove the traditional common-law elements of negligence, including duty, breach, foreseeability, causation, and injury in order to prevail.[13] Federal law also governs the parties' burden of proof on the merits;[14]

---

3. *Brady v. Southern R. Co.,* 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943).

4. 45 U.S.C. § 55.

5. 45 U.S.C. § 51.

6. 45 U.S.C. § 54.

7. 45 U.S.C. § 53 states, in pertinent part, as follows:

> [T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

8. 45 U.S.C. § 56.

9. *Urie v. Thompson,* 337 U.S. at 180–81, 69 S.Ct. 1018.

10. *Chicago, M. & St. P. Ry. Co. v. Coogan,* 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041 (1926).

11. *Id.*

12. *Urie,* 337 U.S. at 174, 69 S.Ct. 1018; *Chesapeake & O. Ry. Co. v. Stapleton,* 279 U.S. 587, 593, 49 S.Ct. 442, 73 L.Ed. 861 (1929).

13. *Coogan,* 271 U.S. at 474, 46 S.Ct. 564; *Adams v. CSX Transportation, Inc.,* 899 F.2d 536 (6th Cir.1990).

14. *Central Vermont R. Co. v. White,* 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915) (federal law places burden of proving contributory negligence on defendant, rendering state rule requiring plaintiff to prove that he was not guilty of contributory negligence inapplicable to FELA claim).

the sufficiency of the evidence;[15] the substantive law required in instructions,[16] and the proper measure of damages,[17] including the prohibition against prejudgment interest[18] and the requirement that future damages be reduced to present value[19] and measured in after-tax dollars.[20]

■ The law of the forum governs procedural matters when a FELA claim is tried in state court.[21] Thus, state and local rules concerning pleading,[22] verdicts,[23] the form of jury instructions,[24] admissibility of evidence,[25] reviewability of damages for excessiveness,[26] and other procedures[27] gen-

**15.** *Brady,* 320 U.S. at 479, 64 S.Ct. 232; *Western & Atlantic R.R. v. Hughes,* 278 U.S. 496, 49 S.Ct. 231, 73 L.Ed. 473 (1929); *Coogan,* 271 U.S. at 474, 46 S.Ct. 564.

**16.** *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985) (error in FELA action to refuse instruction on present value); *Norfolk & Western Ry. Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) (whether error to refuse instruction in FELA action that damages are exempt from income tax a federal question).

**17.** *Chesapeake & O. Ry. Co. v. Kelly,* 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916) (proper measure of damages a federal question, inseparable from right of action).

**18.** *Monessen Southwestern Ry. Co. v. Morgan,* 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988) (state court may not award prejudgment interest in FELA action pursuant to local practice).

**19.** *Kelly,* 241 U.S. at 491, 36 S.Ct. 630 (future payments or other pecuniary benefits should be awarded based on their present value).

**20.** *Liepelt,* 444 U.S. at 496, 100 S.Ct. 755 (federal law exempts damages received due to personal injury from income tax).

**21.** *See White,* 238 U.S. at 511, 35 S.Ct. 865.

**22.** *Brown v. Western Railway of Alabama,* 338 U.S. 294, 296, 70 S.Ct. 105, 94 L.Ed. 100 (1949) (state rule requiring pleading allegations to be construed most strongly against pleader posed unnecessary burden on plaintiff's assertion of federal rights); *Davis v. Wechsler,* 263 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143 (1923) (local practice permitting defendant to unite plea as to jurisdiction and defense on merits could not defeat assertion of federal right).

**23.** *Arnold v. Panhandle & Santa Fe Railway Co.,* 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957) (error in FELA claim to apply state law requiring general verdict to yield to inconsistent specific findings).

**24.** *See, e.g., Pryor v. National R.R. Passenger Corp.,* 301 Ill.App.3d 628, 234 Ill.Dec. 897, 703 N.E.2d 997, 1000–01 (1998); *Duren v. Union Pacific R. Co.,* 980 S.W.2d 77, 79 (Mo. App.1998).

**25.** *Liepelt,* 444 U.S. at 492–93, 100 S.Ct. 755 (whether evidence concerning federal taxes on decedent's earnings was properly excluded is a federal question, but trial court is not required to permit such evidence where future tax impact *de minimus* ); *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946) (admissibility of evidence in FELA action a matter for trial court absent abuse of discretion); *Kelly,* 241 U.S. at 491, 36 S.Ct. 630 (forum law determines evidence admitted to show the method for calculating present value).

**26.** *Louisville & N.R. Co. v. Holloway,* 246 U.S. 525, 38 S.Ct. 379, 62 L.Ed. 867 (1918) (court held that it lacked power to review state high court's decision that damages not excessive where state court did not necessarily misconstrue federal law).

**27.** *See Louisville & N.R. Co. v. Stewart,* 241 U.S. 261, 36 S.Ct. 586, 60 L.Ed. 989 (1916) (court upheld local practice imposing 10% penalty on party obtaining supersedeas if judgment affirmed). *But see Morgan,* 486 U.S. at 340, 108 S.Ct. 1837 (error to refuse reduction to present value based on state rule equating future inflation with future interest rates); *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 546–52, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) (state law does not control method for calculating present value in federal right of action); *Holloway,* 246 U.S. at 528–29, 38 S.Ct. 379 (state rule requiring present value of future losses to be computed

erally govern FELA claims unless their application is found to diminish, destroy, or interfere with a right or obligation created by the FELA. The cases indicate and the Supreme Court acknowledges that formulating a clear rule to distinguish what is procedural from what is substantive is impossible.[28]

## II. Jury Instructions

The purpose of instructing a jury is to guide jurors in applying the law correctly to the facts in evidence. Pattern jury instructions used in FELA cases tried in federal court tend to be lengthy and detailed.[29] Kentucky state courts take a "bare bones" approach to jury instructions, however, leaving it to counsel to assure in closing arguments that the jury understands what the instructions do and do not mean.[30] A proper instruction correctly advises the jury " 'what it must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof' on that issue." [31] Regardless of what form jury instructions take, they must state the applicable law correctly and neither confuse nor mislead jurors.[32] A

trial court has a duty to give a correct instruction when a party offers an erroneous or misleading instruction on a proper issue.[33]

## A. Proximate Cause

The elements of a FELA claim are determined by federal common law unless abrogated specifically by the Act.[34] The FELA imposes liability for an employee's injury that results "in whole or in part" from the railroad's negligence and reduces rather than prohibits a recovery due to the injured worker's contributory negligence. It contains no express abrogation of common-law proximate cause; thus, courts applied common-law proximate cause concepts and adhered to the rule that "[railroad] negligence must be a link in an unbroken chain of reasonably foreseeable events" causing the worker's injury.[35] Cases indicate that lower courts had difficulty applying proximate cause concepts to FELA claims.[36] They also indicate that courts had even greater difficulty with the distinctions between proximate cause in a FELA action and in a common-law negligence action.

at state's legal interest rate inapplicable to FELA claim).

28. *Brown v. Western Railway of Alabama,* 338 U.S. 294, 296, 70 S.Ct. 105, 94 L.Ed. 100 (1949).

29. *See, e.g.,* 3A Kevin F. O'Malley et al., Federal Jury Practice And Instructions, ch. 155 (5th ed. 2001).

30. *See Lumpkins v. City of Louisville,* 157 S.W.3d 601 (Ky.2005); *Young v. J.B. Hunt Transportation, Inc.,* 781 S.W.2d 503, 506 (Ky.1989).

31. *Olfice, Inc. v. Wilkey,* 173 S.W.3d 226, 229 (Ky.2005).

32. *Drury v. Spalding,* 812 S.W.2d 713 (Ky. 1991).

33. *Murphy v. Harmon,* 291 Ky. 504, 165 S.W.2d 11 (1942).

34. *Sinkler v. Missouri Pacific R. Co.,* 356 U.S. 326, 329, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958).

35. *Brady,* 320 U.S. at 484, 64 S.Ct. 232.

36. *See, e.g., Tennant v. Peoria & P.U. Ry. Co.,* 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed. 520 (1944), in which the court noted that a FELA plaintiff must prove that the defendant's negligence "was the proximate cause in whole or in part of the [plaintiff's injury]" and reversed a lower court's finding that there was insufficient proof of proximate causation to create a jury question.

*Coray v. Southern Pacific Co.*[37] concerned the application of proximate cause principles to a case where there was evidence of consecutive employer and employee fault. At issue was a claim for the death of a railway worker who crashed the flat-top motorcar that he operated into the rear end of a freight train that had stopped unexpectedly due to a defect in its brake lines. Although the defect violated the Federal Safety Appliance Act, providing evidence of railroad negligence, the trial court directed a verdict for the railroad based on evidence that the worker was looking backwards immediately before the crash and failed to apply the motorcar's brakes. The state appellate court upheld the decision. It reasoned that the train's unexpected stopping was a cause of the injury in a philosophical sense, insofar as it created a condition upon which the worker's negligence operated, but was not the proximate cause in a legal sense because it was not "a substantial as well as actual factor" in causing the injury. The Supreme Court reversed. Finding implicitly that both parties' negligence proximately caused the injury, the court stated that the "in whole or in part" language from 45 U.S.C. § 51 entitled the worker to recover if employer negligence was "the sole or a contributory proximate cause" of injury.[38] The court reasoned that the statutory language is "simple and direct;" that it makes employers responsible for injuries "resulting in whole or in part" from employer negligence; and that "[c]onsideration of its meaning by the introduction of

dialectical subtleties can serve no useful interpretative purpose."[39]

Rendered shortly after *Coray,* the majority and two minority opinions in *Carter v. Atlanta & St. Andrews Bay Ry. Co.*[40] again concerned the application of traditional proximate cause concepts to a FELA claim. In *Carter* the Supreme Court reversed the Fifth Circuit's decision to affirm a directed verdict for the railroad. The Fifth Circuit agreed with the trial court that the failure of a rail car to couple on the first of two impacts was a remote rather than proximate cause of an injury that occurred in the second impact. Citing *Coray*[41] for the principle that a plaintiff may prevail by convincing the jury that the railroad's negligence is "a contributory proximate cause" of injury, the Supreme Court held that the evidence of causation was sufficient to create a jury question. An opinion by Justice Frankfurter indicated that he considered *certiorari* to be granted improvidently in a case where a trial and appellate court had "wrestled with the phantoms of proximate cause" and the merits involved only an evaluation of the record. The opinion noted that workers' compensation laws avoid "the inevitably casuistic efforts to apply concepts of 'negligence,' proximate cause,' and contributory negligence" under the FELA by dealing with industrial injuries under the principle of insurance rather than negligence.[42]

The parties in the present case cite to *Rogers v. Missouri Pacific Railroad Co.,*[43] a subsequent case in which the Supreme

**37.** 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949).

**38.** *Coray,* 335 U.S. at 523, 69 S.Ct. 275.

**39.** *Coray,* 335 U.S. at 524, 69 S.Ct. 275.

**40.** 338 U.S. 430, 434–35, 70 S.Ct. 226, 94 L.Ed. 236 (1949).

**41.** 335 U.S. at 523, 69 S.Ct. 275.

**42.** *Carter,* 338 U.S. at 437, 70 S.Ct. 226.

**43.** 352 U.S. 500, 507, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

Court addressed the effect of the FELA's "in whole or in part" language on traditional proximate cause concepts. In *Rogers* the worker's primary duty was to burn off weeds beside the railroad tracks, but he was instructed to stop doing so when a train passed in order to watch for hotboxes. Flames from burning weeds spread while he was performing the latter duty. Moving blindly away from the flames, he was injured when he slipped on loose gravel that the employer left on the surface of a culvert and fell. Reversing a state court decision, the Supreme Court found adequate evidence to create a jury question concerning causation but rejected a standard requiring the worker to show that the injury would not have occurred but for the employer's negligence or absent its negligent act. The court reasoned:

> That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.[44]

The court concluded that the test of a jury case under the FELA is whether the evidence permits a reasonable conclusion "that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."[45]

The Supreme Court has yet to state clearly whether *Coray, Carter,* and *Rogers* altered the common-law proximate cause standard or simply construed 45 U.S.C. § 51 as rejecting the "sole proximate cause" test in favor of an "a proximate cause" test. Dictum found in some subsequent cases indicates that traditional proximate causation is inapplicable in FELA cases.[46] The court declined to address what the causation standard should be in *Norfolk Southern Ry. Co. v. Sorrell,*[47] holding only that a state court erred by failing to subject FELA plaintiffs and defendants to the same standard for proving negligence and contributory negligence.[48] Concurring opinions by Justices Souter and Ginsburg differed concerning the implications of *Rogers* on proximate cause concepts.[49]

The prevailing view in this circuit as expressed in *Tyree v. New York Central Railroad Co.*[50] is that the FELA does not require a finding of proximate causation. Acknowledging that the Mathes and Devitt[51] instruction the plaintiff requested

44. *Rogers*, 352 U.S. at 506, 77 S.Ct. 443.

45. *Id.*

46. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), indicates that a relaxed standard of causation applies to FELA claims. An earlier case, *Crane v. Cedar Rapids & Iowa City Railway Co.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969), indicates that an employee claiming under the FELA "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act ...." (citations omitted).

47. 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007).

48. At issue were Missouri approved instructions that allowed a finding for the plaintiff if

railroad negligence contributed "in whole or in part" to the injury; whereas, they allowed a finding of contributory negligence if the plaintiff's negligence "directly contributed to cause" the injury.

49. *Sorrell*, 549 U.S. at 172–82, 127 S.Ct. 799.

50. 382 F.2d 524 (6th Cir.1967), *cert. denied,* 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967).

51. Mathes and Devitt, Federal Jury Practice And Instructions, § 84.12 (1965). The instruction states: "An injury or damage is proximately caused by an act, or failure to act, whenever it appears, from a preponderance of the evidence in the case, that the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage. So, if you should find,

would have been proper but noting the difficulty of defining proximate cause clearly in FELA cases, the court opined that "it would be better ... if no mention of proximate causation whatever was made to the jury."[52] The court recommended, instead, an instruction stating that an employer is liable for damages if its negligence played any part, even the slightest, in producing the injury; that the employer's negligence and employee's negligence, if any, must be compared; and that the recovery must be diminished in proportion to the employee's negligence. In *Hamilton v. CSX Transportation, Inc.*,[53] the Kentucky Court of Appeals relied on *Tyree* and a subsequent Sixth Circuit case[54] to state that proximate cause instructions should be avoided in FELA cases and that a causation instruction should "reflect the U.S. Supreme Court's language in *Rogers*."

◼ CSX asserts that the Court of Appeals erred in the present case by affirming the trial court's refusal to give a requested instruction on proximate causation and by declining an invitation to rely on

Justice Souter's concurring opinion in *Sorrell*[55] as a basis to revisit *Hamilton.* The crux of its argument is that *Rogers* and *Hamilton* address a FELA plaintiff's right to recover when an injury has multiple causes but fail to address direct causation and, thus, are not authority for refusing to instruct on proximate cause. CSX concludes that proximate cause remains an essential element of a FELA claim under *Rogers* and, thus, that a jury must be instructed on proximate cause.

The instruction tendered by CSX required Begley to prove that its negligence "contributed proximately, in whole or in part" to his injury and stated, "It is not enough for [Begley] to show that the Defendant's negligence, if any, was an indirect or remote cause of his injury." The record indicates that Begley objected based on *Hamilton,* after which CSX offered to delete the word "proximately." We conclude that the trial court did not err by refusing the amended instruction and leave the question of whether the FELA generally requires a proximate cause instruction for another day. Such

---

from the evidence in the case, that any negligence of the defendant contributed, in any way or manner, toward any injury or damage suffered by the plaintiff, you may find that such injury or damage was proximately caused by the defendant's act or omission."

**52.** *Tyree*, 382 F.2d at 529.

**53.** 208 S.W.3d 272, 278 (Ky.App.2006). The appellate court found the jury instructions to be prejudicial insofar as the "in whole or in part" language of causation from 45 U.S.C. § 51 was "buried" in a separate proximate cause definition. Moreover, an interrogatory requiring employer negligence to be "a substantial cause" of Hamilton's injury ignored the language entirely. The court stated that *Rogers* adopted a relaxed standard of causation that abrogated traditional common-law tests of proximate cause and did not suggest that a FELA plaintiff must show "substantial cause" in order to prevail.

**54.** *Hausrath v. New York Central Railroad Co.*, 401 F.2d 634, 636–38 (6th Cir.1968). The *Hausrath* court found reversible error under both common law and FELA negligence concepts in instructions that employer negligence must be "the direct and proximate cause" of injury; that "proximate cause means the closest cause, the direct cause, the cause but for which this would never have happened in the first place;" and that used the phrase "the proximate cause," "the direct cause," or "the real cause" repeatedly. The court explained that the instructions failed to indicate that the defendant's negligence need only be "a proximate cause" of injury. Moreover, they failed to state or emphasize sufficiently that an employer is liable under the FELA for injuries "resulting in whole or in part" from its negligence.

**55.** 549 U.S. at 172, 127 S.Ct. 799.

an instruction was unnecessary under the evidence in this case.

Begley introduced evidence from Drs. Chaney and Kress that repetitive microtrauma incurred during twenty years of performing moving mounts and dismounts accelerated the development of his non-work-related arthritic condition. Testifying for CSX, Dr. Love stated that Begley's work did not in any way contribute to his age-related degenerative condition, which was identical to what it would have been had he never performed a moving mount or dismount. Thus, both parties' evidence established direct or proximate causation (*i.e.*, an unbroken chain of causation),[56] be it from multiple causes (work-related microtrauma and natural aging) or from a single cause (natural aging).

Although Dr. Love's testimony created a dispute over whether Begley's work affected the development of his degenerative condition, it failed to create a dispute over whether his work, if it accelerated the development of his condition, did so directly or indirectly. Evidence that the exposure to microtrauma ceased in 1990 was a consideration for the jury when weighing the conflicting medical testimony. Although temporal remoteness may show a lack of proximate causation on other facts, nothing in this claim indicates that aging acted as an intervening superseding cause or that microtrauma affected the development of Begley's degenerative condition only indirectly.

The trial court did not err in refusing CSX's amended instruction because the evidence established proximate cause and created no jury question over the issue.

Moreover the jury might have construed the instruction to mean that the law precluded a finding that CSX's negligence contributed "in whole or in part" to the development of Begley's osteoarthritis if it considered the microtrauma to be "remote" inasmuch as it occurred from 1970 to 1990.

Having denied CSX's instruction, the trial court instructed the jury that a railroad is liable for injuries resulting in whole or in part from its negligence. The instructions permitted a finding for Begley if CSX failed to exercise ordinary care and its failure to do so "was a factor, no matter how slight, in contributing in whole or in part to the development of arthritis in the Plaintiff's knees and hips." The court instructed the jury upon a positive finding to determine whether Begley failed to exercise ordinary care for his own safety and, if he failed to do so, whether his conduct was a factor, no matter how slight, in contributing in whole or in part to the arthritis. Finally, the court instructed the jury upon a positive finding to assign a percentage of fault to each party. The jury received adequate instructions under the evidence.

### B. Foreseeability

CSX asserts that the trial court erred by refusing to give a tendered instruction on foreseeability. The proposed instruction stated in relevant part:

> There is a requirement in establishing negligence, namely that [CSX] . . . using ordinary caution and prudence, should have foreseen that some injury would probably arise from their acts. I tell

---

**56.** *See Atchison, Topeka, & Santa Fe Railway Co. v. Calhoun*, 213 U.S. 1, 7, 29 S.Ct. 321, 53 L.Ed. 671 (1909). The Supreme Court explained in this pre–FELA case, "Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."

you this because "reasonable foreseeability of harm" is an essential ingredient of the Federal Employers' Liability Act negligence. The railroad's duty is measured by what is reasonably foreseeable under the circumstances, by what in the light of the facts *then known,* should reasonably have been anticipated. (emphasis original).

If you find that *the claimed injuries* to the Plaintiff [were] not reasonably foreseeable to the railroad, your verdict must be in favor of the Defendant. (emphasis added).

▆▆▆ CSX states correctly that common-law negligence requires proof that the defendant knew or should have known that its conduct created a reasonable likelihood of injury. We acknowledge that foreseeability of harm is an essential element of negligence under the FELA.[57] We conclude, however, that the trial court did not err because the requested instruction might have misled the jury and because the trial court's instructions addressed foreseeability adequately.

▆▆▆ *Gallick v. The Baltimore and Ohio Railroad Co.*[58] indicates that a separate foreseeability instruction is not required in FELA cases if the jury is instructed that the defendant's duty is "measured by what a reasonably prudent person would anticipate" under the same or similar circumstances. The court noted also that a defendant "need not foresee the particular consequences of [its] negligent acts" but only that its conduct would reasonably be anticipated to result in harm.[59] Thus, a defendant is liable for even the improbable or unexpectedly severe results of its negligence.[60]

Mindful that a FELA defendant need not foresee the particular type of injury that occurred, we conclude that the reference in the second paragraph of the tendered instruction to "the claimed injuries" might have misled the jury in this case. When read in the context of the entire instruction and the facts, the reference might have led the jury to think erroneously that it must find for the defendant if it considered an acute injury to be a foreseeable consequence of performing moving mounts and dismounts but did not consider the development of osteoarthritis in the knees and hips to be foreseeable. Thus, the trial court did not err in refusing the instruction.

Attacking the instructions that were given, CSX asserts that the use of the words "risks or dangers" in Instruction 5 rather than "risk of injury" might have misled the jury to conclude that performing moving mounts and dismounts was "generally risky" but not that CSX should have known that it "was also potentially injurious in the relevant sense." We disagree.

The jury received instructions that complied with the foreseeability requirement as construed in *Gallick.* Instruction 3 informed the jury that CSX was liable for injuries to employees that resulted in whole or in part from its negligence, "including negligence related to its work practices." Instruction 4 defined negligence as doing some act that a reasonably prudent person or corporation would not do under similar circumstances or failing to do what a reasonably prudent person or corporation would do under similar circumstances. It equated negligence with a "failure to use ordinary care under the

---

57. *Inman v. Baltimore & O.R. Co.,* 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959).

58. 372 U.S. 108, 118, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).

59. *Gallick,* 372 U.S. at 120, 83 S.Ct. 659.

60. *Id.*

circumstances." Instruction 5 required CSX "to use ordinary care under the circumstances" to provide Begley "with a reasonably safe place in which to work" and "to guard against risks or dangers of which it knew, or by the exercise of ordinary care should have known." The instruction defined ordinary care as "the care an ordinarily prudent railroad acting under the same or similar circumstances would exercise under the facts presented in this case."

The jury found under Instruction 5 that CSX "failed to exercise the care required of it" and that its failure "was a factor, no matter how slight, in contributing in whole or in part to the development of osteoarthritis in [Begley's] legs and hips." The jury made clear by doing so that it thought CSX should have realized when requiring employees to perform moving mounts and dismounts that the maneuvers could reasonably be anticipated to result in injury. *Gallick* indicates that the FELA requires no more.[61]

### C. Non-taxation of Damages

CSX asserts that the trial court committed reversible error by refusing to instruct the jury as follows:

> You are charged that any award made to plaintiff as damages in this case, if any award is made, is not subject to federal or state income taxes, and you should not consider such taxes in fixing the amount of an award made to plaintiff, if you make any.

CSX's argument relies on *Norfolk & Western Ry. Co. v. Liepelt*[62] for two principles: 1.) that personal injury awards are exempt from state and federal income tax;[63] and 2.) that refusing to instruct the jury concerning the exemption constitutes reversible error. Although we agree that the trial court erred by failing to give the requested instruction, we do not agree that the error compels us to reverse in this case.

Most states, including Kentucky,[64] consider tax implications to be immaterial to the calculation of damages for personal injury. The U.S. Supreme Court reached the opposite conclusion with respect to FELA claims in *Liepelt*. This case involves a FELA claim and CSX tendered an instruction that closely resembled the instruction addressed in *Liepelt*. We conclude, therefore, that the trial court erred by refusing to give the instruction. The issue then becomes whether *Liepelt* compels reversal.

*Liepelt* involved a wrongful death claim brought in state court under the FELA. Objecting at trial to the plaintiff's use of gross earnings to prove pecuniary damages, the defendant offered to produce expert testimony that estimated the income taxes on the decedent's past and future earnings to be about $57,000 and placed the net pecuniary loss at $138,327, which was significantly less than the plaintiff's evidence. The trial court refused to admit the evidence and also refused to instruct the jury that a damage award would not

---

61. 372 U.S. at 118–19, 83 S.Ct. 659.

62. 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980).

63. *See* 26 U.S.C. § 104(a)(2) (gross income excludes damages received on account of personal injuries); KRS 141.010(9) (adopts Internal Revenue Code definition of gross income).

64. *See Paducah Area Public Library v. Terry*, 655 S.W.2d 19 (Ky.App.1983); *Louisville & Nashville Railroad Co., Inc. v. Mattingly*, 339 S.W.2d 155 (Ky.1960). *See also* 16 A.L.R.4th 589 (1982).

be subject to income tax.[65] The jury awarded damages of $775,000 although the plaintiff's expert placed the loss at a present value of $302,000 plus the value of the care and training that the decedent would have provided his young children.

Appealing both rulings, the defendant argued that the jury must have assumed the award would be taxed or it would not have rendered a verdict more than double the plaintiff's proof. The plaintiff attributed the excess to non-pecuniary damages. The Supreme Court stated that whether it was error to exclude its evidence concerning the federal taxes on the decedent's earnings and to refuse the defendant's instruction were federal questions. Having determined that both the evidentiary and instructional rulings were erroneous, the court reversed.

The court acknowledged a judicial policy of considering evidence that predicted future tax consequences to be too speculative and complex for jury deliberations in FELA cases but noted that the policy dated to an earlier time, when federal taxes were relatively insignificant. Mindful of the contemporary American public's "tax consciousness," the court determined that after-tax income more closely measures the pecuniary loss to a deceased worker's survivors than gross income and, thus, is the proper basis of an award. The court noted, however, that trial courts would not be required to permit such evidence in every case and that it might be more confusing than helpful in cases where taxes would have a *de minimis* impact.

Addressing the instructional error, the court noted the discrepancy between the plaintiff's evidence and the jury's verdict and observed that it was reasonable to suppose the jury inflated the award under the erroneous belief that a portion of it would be paid in taxes.[66] The court noted also that regardless of whether such speculation was accurate, the defendant's instruction would do no harm and help prevent the jury from inflating the award under the mistaken belief that it would be taxed. Thus, the trial court erred by refusing it.

■ The Supreme Court has yet to clarify whether *Liepelt* mandates reversal whenever a trial court refuses to instruct the jury that damages are exempt from state and federal income tax. Of the lower federal appellate courts, the Fourth, Fifth, and Eighth circuits have considered whether such an error is reversible per se.[67] Their conclusions differed.

65. The requested instruction stated, "[Y]our award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." *Liepelt*, 444 U.S. at 492, 100 S.Ct. 755.

66. 444 U.S. at 497, 100 S.Ct. 755.

67. Two cases, by the Fourth and Tenth Circuits, concerned other issues regarding the applicability of *Liepelt*. In *Allred v. Maersk Line, Ltd.*, 35 F.3d 139, 141–42 (4th Cir. 1994), the trial court refused the defendant's taxation instruction and the jury awarded $1,000,000, after which the plaintiff agreed to a remittitur to $500,000. The defendant appealed based among other things on the instructional error and inadequacy of the remittitur. The Fourth Circuit reversed and remanded for a new trial concerning damages, having determined that *Liepelt* applies to Jones Act claims and is not limited to cases concerning lost wages. *Fulton v. St. Louis–San Francisco Ry. Co.*, 675 F.2d 1130, 1134–35 (10th Cir.1982), holds that no manifest injustice results from applying *Liepelt* retrospectively because to do so merely requires a retrial on damages before a properly-instructed jury. Neither case indicates that a harmless error argument was raised. Nor does *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), on which they relied for the principle that *Liepelt* announced a common-law rule governing all claims decided under federal law.

In *Cazad v.Chesapeake and Ohio Ry. Co.*[68] the Fourth Circuit held without analysis that *Liepelt* mandated reversal based on the trial court's refusal to instruct the jury that an award is not subject to taxation. The Fifth Circuit rejected an argument in *O'Byrne v. St. Louis Southwestern Railway Co.*[69] that a refusal to give the instruction was harmless error, convinced that the Supreme Court did not consider the size of the gap between the plaintiff's evidence and the jury verdict to be significant to the *Liepelt* holding. Neither decision addressed the fact that *Liepelt* involved two erroneous rulings and failed to attribute the decision to reverse to either of them alone. Focusing on that fact, the Eighth Circuit determined in *Flanigan v. Burlington Northern, Inc.*[70] that *Liepelt* does not require reversal in every instance that a trial court refuses a taxation instruction.

*Flanigan* concerned a FELA claim brought in federal court in which the trial court refused a taxation instruction. Affirming despite the error, the Eighth Circuit reasoned that federal court jury instructions are subject to a harmless error rule that places on the appellant the burden to show that prejudice resulted from the error.[71] The court noted that the reversal in *Liepelt* was based on the trial court's combined evidentiary and instructional errors. The court noted also that, unlike the defendant in *Liepelt*, this defendant was not precluded from introducing evidence of net earnings and pointed to no evidence that the jury inflated the award on the erroneous belief that it would be taxed. Moreover, the verdict was not excessive, was supported by the evidence, and indicated that the jury was not operating under a misconception concerning taxes. Like the Eighth Circuit and some other state appellate courts,[72] we do not read *Liepelt* as requiring the conclusion that a refusal to give a tax instruction always constitutes reversible error.

The present case was tried in state court. CSX notes that CR 61.01 presumes erroneous jury instructions to be prejudicial. Moreover, unlike the *Flanigan* court's interpretation of FRCP 61, Kentucky courts have construed CR 61.01 as placing the burden on the appellee to show a lack of prejudice.[73] Asserting that the evidence does not permit Begley to meet his burden of showing a lack of prejudice, CSX concludes that his award must be reversed.

CSX argues that one can only speculate about whether the size of the verdict resulted from a mistaken assumption that damages are taxed because the jury might have reached either of two conclusions. First, the jury might have thought that $250,000 fairly compensated Begley's pain and suffering and failed to consider any tax implications. Or, second, the jury might have thought that a sum less than $250,000 would compensate Begley for his damages but then raised the sum to $250,000 in the mistaken belief that the award would be taxed. CSX concludes

**68.** 622 F.2d 72 (4th Cir.1980).

**69.** 632 F.2d 1285, 1287 (5th Cir.1980).

**70.** 632 F.2d 880 (8th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

**71.** *Id.* at 889. *See* FRCP 61.

**72.** *See, e.g., Dallas v. Burlington Northern Inc.,* 212 Mont. 514, 689 P.2d 273 (1984) (error harmless where verdict equaled plaintiff's proof); *Marlow v. Atchison, Topeka & Santa Fe Ry. Co.,* 671 P.2d 438 (Colo.App. 1983) (error harmless where no showing that award excessive).

**73.** *McKinney v. Heisel,* 947 S.W.2d 32, 35–36 (Ky.1997).

that Begley must lose because neither conclusion is more persuasive. We disagree and note that the jury might have reached other conclusions as well.[74]

■■■■ An appellate court must reverse a judgment when a substantial likelihood exists that the instructions confused or misled the jury[75] or when the court cannot determine from the record that an erroneous instruction did not affect the verdict.[76] When considering a claim of harmless error under CR 61.01, the court determines whether the result probably would have been the same absent the error[77] or whether the error was so prejudicial as to merit a new trial.[78] Having reviewed the record and considered the size of the award, we think it more likely that the jury determined what amount would compensate Begley fairly and failed to consider any tax implications. We conclude, therefore, that the error in refusing the instruction was not so prejudicial as to warrant a new trial.

Although Begley's attorney requested $500,000 for past and future pain and suffering, the jury apportioned 50% fault to CSX and then awarded damages of $250,000, which the trial court reduced by 50% to $125,000. The fact that a jury awards less than the plaintiff requests may or may not indicate that the trial court's failure to give a proper tax instruction was harmless. More significant to the analysis is whether the verdict was excessive under the evidence.[79]

■■■■ A verdict is excessive under the evidence if it "cause [s] the mind at first blush to conclude that it was returned under the influence of passion or prejudice on the part of the jury."[80] Even if liberal, an award that does not shock the conscience or is not clearly excessive may not be set aside.[81] The award in the present case was not clearly excessive under the evidence.

Begley's award compensated him for approximately 27 years of pain and suffering due to his injury.[82] Even Dr. Love testi-

---

**74.** Instructions 7 and 8 directed the jury to apportion fault and stated that CSX was not responsible for the percentage of negligence assigned to Begley. Instruction 9 directed the jury to award damages for past and future pain and suffering in an amount not to exceed $500,000. The instruction failed to state that the amount should equal the total Begley would be allowed to recover if his contributory fault were disregarded. Thus, having apportioned 50% fault to CSX, the jury might have determined that $250,000 compensated Begley fairly for CSX's fault and failed to consider any tax implications. Or the jury might have thought that a lesser sum compensated him fairly for CSX's fault and raised the sum to $250,000 in the mistaken belief that the award would be taxed.

**75.** See McKinney, 947 S.W.2d at 35–36; Drury v. Spalding, 812 S.W.2d 713, 717 (Ky. 1991).

**76.** City of Middlesboro v. Brown, 63 S.W.3d 179, 182 (Ky.2001); Prichard v. Kitchen, 242 S.W.2d 988, 992 (Ky.1951).

**77.** Keesee v. Smith, 289 Ky. 609, 159 S.W.2d 56, 58 (1941); Ritchie v. Perry County, 276 Ky. 57, 58, 122 S.W.2d 988 (1938).

**78.** Hamilton, 208 S.W.3d at 275.

**79.** See Flanigan, 632 F.2d at 890. We acknowledge that Kentucky differs from Flanigan by placing the burden on the appellee to prove a lack or prejudice due to instructional error. Nonetheless, we agree with Flanigan insofar as a verdict that is not excessive under the evidence shows a probable lack of prejudice.

**80.** Louisville & Nashville Railroad Co., Inc. v. Mattingly, 339 S.W.2d 155, 160–61 (Ky.1960).

**81.** Id.

**82.** The period ran from the mid 1990s until his April 2007 trial and thereafter for the 15 years estimated to remain in his life expectancy.

fied that Begley suffered presently from severe, end-stage arthritis in his knees and hips. Dr. Love acknowledged that "if I had his hips, I would have trouble walking a block" and stated that Begley would need to consider knee and hip replacements in the future. We affirm because the evidence indicates that the verdict was reasonable and was not returned under the influence of passion or prejudice. The record indicates that the jury determined what amount would compensate Begley reasonably for past and future pain and suffering and did not inflate that amount in the mistaken belief that it would be taxed.

### D. Present Value of Noneconomic Damages

■ CSX complains that the trial court refused to instruct the jury on present value as follows:

> If you find in favor of the Plaintiff and decide to make an award for pain and suffering in the future, you must take into account the fact that the money awarded by you is being received all at one time instead of over a period of time extending into the future and that the Plaintiff will have the use of this money in a lump sum. You must, therefore, determine the present value or present

worth of the money which you award for future pain and suffering.

■ The Supreme Court determined in *Chesapeake & Ohio Ry. Co. v. Kelly*[83] that "when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only." Thus, a FELA defendant is entitled to an instruction that the lump sum awarded for future economic damages must be based on the present value of the stream of income the plaintiff expects to lose due to the injury or the stream of medical and other expenses that the plaintiff expects to incur. CSX asserts that the rule applies to future pain and suffering as well as to economic damages and that the trial court committed reversible error in this case by refusing the instruction. We disagree.

*Kelly* and the subsequent Supreme Court cases addressing present value concerned future economic damages.[84] The court has yet to decide squarely whether damages for future pain and suffering must also be reduced to present value. Our research reveals no uniform rule among the lower federal courts that have addressed the matter in a case controlled by federal law. Most federal circuits,[85] most states,[86] and the Restatement (Second) of Torts[87] favor exempting future

---

**83.** 241 U.S. 485, 491, 36 S.Ct. 630, 60 L.Ed. 1117 (1916).

**84.** *See Monessen Southwestern Ry. Co. v. Morgan,* 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).

**85.** *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880 (8th Cir.1980), *cert. denied* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981); *Taylor v. Denver & Rio Grande Western Railroad Co.,* 438 F.2d 351, 352–53 (10th Cir. 1971); *Texas & Pacific Railway Co. v. Buck-*

*les,* 232 F.2d 257, 264 (5th Cir.1956), *cert. denied,* 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498 (1956). *Compare DeChico v. Metro–North Commuter R.R.,* 758 F.2d 856 (2d Cir. 1985).

**86.** *See Oliveri v. Delta Steamship Lines, Inc.,* 849 F.2d 742, 750–51 (1988).

**87.** § 913A (1979). The Restatement indicates that the present worth reduction applies to future pecuniary losses, such as future lost earnings and medical expenses. It does not apply to awards for future noneconomic damages such as pain and suffering or emotional distress.

noneconomic damages from the present value rule. Absent a decision by the Sixth Circuit, we find the majority view to be more persuasive and note its conformity with Kentucky law.[88]

*Chicago & N.W. Ry. Co. v. Candler*[89] explains that damages for pain and suffering are exempt from the present value rule because they differ in kind from damages for future wages and expenses. Damages for future wages involve the loss of an anticipated stream of income, the amount of which can be calculated from market-based factors such as past wages, fringe benefits, and unreimbursed employee expenses; anticipated wage increases due to raises and promotions; remaining work life; and inflation.[90] Damages from an injury also include expenses, such as for future medical care, which can likewise be calculated from relevant market-based factors. Predicting the total anticipated loss for each future year involves some degree of speculation, but an annual figure can be calculated with reasonable certainty and reduced to present value. Such is not the case with pain and suffering.

No objective standard exists to measure degrees of physical and emotional pain and suffering and no market exists to determine their economic value. Thus, awards for future pain and suffering involve a greater degree of speculation than those for economic losses. The factual bases for such damages include the nature and extent of the injury and its likely effect on the plaintiff. Although argument based on a per diem figure may assist a jury in reaching a fair and reasonable dollar amount as compensation for pain and suffering, experience teaches us that plaintiffs may or may not experience pain and suffering in a predictable pattern each day or each year. Thus, use of the method should not be construed to imply an undue degree of precision in anticipating the probable degree of pain and suffering that a plaintiff will experience at a given time. Jurors determine what fairly and adequately compensates a plaintiff under the evidence "guided by their observation, experience and sense of fairness and right." [91]

We conclude that the trial court did not err by refusing CSX's present value instruction. Instruction 9 directed the jury, if it found CSX to be negligent, to "find from the evidence and award [Begley] such ... damages, if any, you believe he has sustained as a result of mounting and dismounting moving equipment." Verdict Form B indicates that the jury awarded Begley $250,000 in damages for pain and suffering "to fairly and adequately compensate [him] for his injuries." Such damages need not be reduced to present value.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

**88.** *See Louisville & N.R. Co. v. Gayle,* 204 Ky. 142, 263 S.W. 763 (1924).

**89.** 283 F. 881 (8th Cir.1922).

**90.** *Id.* at 884–85. *See also Pfeifer,* 462 U.S. at 533–53, 103 S.Ct. 2541.

**91.** *Candler,* 283 F. at 885. *See also Gayle,* 263 S.W. at 763.