RENDERED:  AUGUST 29, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1340-ME


L.N.E.H.[1]                                                             APPELLANT


|  | APPEAL FROM MARTIN FAMILY COURT |
| v. | HONORABLE ADAM O'BRYAN, JUDGE |
|  | ACTION NO. 24-AD-00009 |


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND H.V.H., A
MINOR CHILD                                                          APPELLEES

AND


NO. 2024-CA-1341-ME


L.N.E.H.                                                                APPELLANT


|  | APPEAL FROM MARTIN FAMILY COURT |
| v. | HONORABLE ADAM O'BRYAN, JUDGE |
|  | ACTION NO. 24-AD-00010 |


---

[1] Pursuant to Court policy, to protect the privacy of minors, we refer to parties in termination of parental rights cases by initials only.

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND H.N.H., A
MINOR CHILD                                                          APPELLEES

AND

NO. 2024-CA-1342-ME

L.N.E.H.                                                              APPELLANT

APPEAL FROM MARTIN FAMILY COURT
v.          HONORABLE ADAM O'BRYAN, JUDGE
ACTION NO. 24-AD-00011

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND K.M.H., A
MINOR CHILD                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  L.N.E.H. (hereinafter "Mother") appeals from the Martin

Family Court's judgments, entered September 29, 2024, terminating her parental

rights to her three minor children.  After careful review of the briefs, record, and

law, we affirm the family court's judgments and, by separate order, grant Mother's appointed counsel's motion to withdraw.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

These appeals pertain to Mother's parental rights to her three children, H.N.H., born in 2009, H.V.H., born in 2011, and K.M.H., born in 2016. On June 1, 2017, the Cabinet for Health and Family Services (hereinafter "CHFS") filed a dependency, neglect, and abuse (hereinafter "DNA") petition for each child and a motion for emergency custody of them. The petitions stated:

> On 5/5/2017 [Mother] was arrested for the second time in a week due to abusing her medication and stealing. According to her family, [Mother] was having a psychotic breakdown. [Mother] attempted to jump out of a moving car and had to be restrained in the car with her child present. [Mother] made arrangements for the children to go with [M.H.[2] (hereinafter "Father")].
>
> Due to [Father's] history of substance abuse and concern[s] about his ability to care for the children, he was placed under supervision until compliant drug screens could be obtained. Once [Mother] was released from jail, she too was placed under supervision until compliant drug screens could be obtained. Worker has sent [Mother and Father] for three random drug screens all of which have been failed and no prescriptions have been verified.

---

[2] M.H. and Mother married at some point; it is unclear from the record whether this was before or after the initial DNA proceedings, but he is only the biological father of K.M.H.; H.N.H. and H.V.H.'s biological father is deceased. We have elected to refer to M.H. as Father for ease of reference.

Based on the petitions, the family court granted emergency custody of the children to CHFS. Mother and Father later stipulated that probable cause supported the children having been removed from the home and entered "no contest" admissions to the petitions. The family court then found that the children were neglected or abused and ordered that temporary custody was to remain with CHFS. Mother and Father worked a case plan, and they regained custody of the children on March 29, 2018.[3]

Thereafter, Mother, Father, and the children moved to West Virginia, where the children were again removed from Mother and Father's custody and placed in foster care for a year. As a result of those proceedings, Father's parental rights were terminated, via a November 6, 2020, judgment, due to his substance misuse and his failure to cooperate with child protective services, and he was ordered to have no contact with the children.[4] Mother ultimately regained custody of the children and moved back to Kentucky at an unknown date.

On October 4, 2022, CHFS filed a second set of DNA petitions and motions for emergency custody of the children. The petitions stated that CHFS had been working with Mother since June 29, 2022, and that it had negotiated a

---

[3] Father only received custody of his biological child, K.M.H.

[4] *State of West Virginia v. [M.H. and L.N.E.H.]*, 19JA-85, 86, 87, and 88. Judgment entered as Exhibit A. We note that the order terminated Father's parental rights to all three of the children, including his stepchildren, H.N.H. and H.V.H.

plan with her to ensure that the children would not have contact with Father. However, Father was found by CHFS to be living in the home, and he was then arrested on pending drug charges. The petitions also stated that the home did not have electricity or back up heat and that Mother was being evicted. The court granted emergency custody to CHFS, and the children were again adjudged to be neglected or abused after Mother entered "no contest" admissions.

During the DNA case, the court ordered Mother to obtain suitable housing, to comply with CHFS, to undergo a University of Kentucky Targeted Assessment Program ("UK TAP") assessment and a psychological/parenting capacity assessment, and to complete random drug screens. Additionally, via a February 10, 2023, order adopting CHFS's recommendations, the DNA court ordered Mother to not be in the presence of Father due to his past domestic violence and substance abuse issues. The DNA court reiterated this order on April 26, 2023, specifically forbidding Mother and the children from contact with Father. At the annual permanency review hearing on September 22, 2023, the DNA court changed the children's permanency goal from reunification to adoption and released CHFS from further reunification efforts. In its findings, the DNA court cited Mother's continued contact with Father and the results of the parental capacity assessment, which we will address in more detail below.

CHFS filed the underlying termination of parental rights (hereinafter "TPR") petitions in March 2024, and the court held a final hearing on August 27, 2024. Dr. Ebben and the family's social worker testified on behalf of CHFS.

Dr. Ebben's testimony pertained to the psychological and parenting capacity evaluation he conducted on Mother. He reported that Mother tested in the borderline range of intellectual functioning, with reading skills at a second-grade level and verbal intellectual functioning at around a fourth-grade level. Mother's difficulties invalidated many of the tests Dr. Ebben administered, but he stated that borderline intellectual function alone would not preclude Mother from parenting at an acceptable capacity. However, Dr. Ebben expressed significant concerns for Mother's protective capacity. He cited in support that this was the third time the children had been removed and Mother's refusal to take responsibility for her actions, Mother instead claiming that the reports about Father's continued drug usage were fake and that she was never told he could not be around the children. Based on his evaluation, he ultimately opined that the children were at a high risk for further maltreatment if returned to Mother's care, specifically for neglect, and that Mother did not have the capacity to provide minimally acceptable care for the children now or in the foreseeable future. Dr. Ebben acknowledged that his assessment was limited by his inability to interview the children or to observe Mother's interactions with them.

The social worker then testified as to the family's history with child protective services both in Kentucky and West Virginia, as detailed above, and her interactions with the family in the final DNA action. The social worker admitted that Mother completed the requested assessments and that she attended weekly supervised visitation with the children, which went well. The social worker was not aware if Mother had paid her court ordered child support, but she stated that Mother would bring food to her visits and that she brought the children school supplies that she had obtained through a community resource. However, the social worker also stated that she observed Mother with Father on multiple occasions, that Mother relied on Father for transportation, and that there were safety issues related to Mother's home, specifically, exposed wiring and a prescription bottle of Suboxone left where it would be accessible to the children. The social worker recounted that at the permanent custody hearing Mother agreed to voluntarily terminate her parental rights, although she did not sign a consent form, and she stated that she would work out visitation with the foster parents, but Mother stopped visiting with the children after the hearing.

The social worker testified that, based on her experience and interactions with the family, Mother's parental rights should be terminated. Her opinion was based on Mother's lack of responsibility and stability, and the fact that the children had been removed from her custody three times. She believed that

CHFS had made every effort to reunify the family and that there were no services that were likely to bring about reunification in a reasonable amount of time. Finally, the social worker testified that the children were placed together in the same pre-adoptive foster home in which they resided during prior removals and that they were healthy and thriving in care.

After CHFS rested its case, Mother moved for a directed verdict, which the court denied. Mother, through counsel, then stated that she would not be testifying and that she had no witnesses. The court swore Mother in and questioned her about her decision to not testify. Mother asserted that she was of sound mind, that she was not under the influence of any substances, that she understood she was forgoing her only opportunity to provide the court with evidence on her own behalf, and that it was her decision alone to not take the stand. The court then announced its decision to grant CHFS's petitions and to terminate Mother's parental rights. Judgments were entered on September 26, 2024, and these consolidated appeals followed.

After the appeals were filed, and in accordance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), Mother's counsel filed an *Anders*[5] brief, attesting that no meritorious issues existed to

---

[5] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 12 L. Ed. 2d 493 (1967).

present to this Court, as well as a motion to withdraw as counsel on appeal. The motion to withdraw was passed to this panel. Mother was afforded time to file a *pro se* brief, but she did not avail herself of this opportunity.

## STANDARD OF REVIEW

When an appointed counsel files an *Anders* brief, the Court is required to "independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372. A family court's findings of fact are subject to the clearly erroneous standard of review. Kentucky Rules of Civil Procedure (CR) 52.01. Accordingly, we give great deference to the family court's findings of fact and will only set them aside if the record is devoid of substantial evidence to support them. *D.G.R. v. Commonwealth, Cabinet for Health & Family Servs.*, 364 S.W.3d 106, 113 (Ky. 2012). We review the application of the law to the facts *de novo*. *Id.*

## ANALYSIS

Involuntary TPR actions are governed by Kentucky Revised Statutes (KRS) 625.090. A TPR petition may be granted only if the family court finds that a three-pronged test has been met by clear and convincing evidence. *Id.* First, the children must be found to be abused or neglected, as defined by KRS 600.020(1). KRS 625.090(1)(a). Second, the family court must find the existence of at least one statutory ground for termination listed in KRS 625.090(2). And third,

termination must be found to be in the best interest of the children after consideration of the factors listed in KRS 625.090(3).

As to the first prong, the court found that the children were abused or neglected by Mother engaging in a pattern of conduct that rendered her incapable of caring for their immediate and ongoing needs; her continuous or repeated failure or refusal to provide essential parental care and protection for the children, considering the children's ages; her failure to provide the children with adequate care, supervision, and other necessities of life; and her failure to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the children, which resulted in their remaining committed to CHFS for fifteen cumulative months out of forty-eight months. KRS 600.020(1)(a)3., 4., 8., and 9.

Although the family court determined that several grounds supported a finding of abuse or neglect, only one is required. The evidence was that, despite knowing that Father's parental rights had been terminated due to a lengthy history of substance misuse and in contravention of a safety plan negotiated with CHFS, Mother continued to allow Father to reside with the children. Even after the children were removed from her custody, and in direct contravention of the DNA court's orders, Mother continued to have contact with Father. The court did not err by concluding that Mother had continuously or repeatedly failed or refused to

provide the children with parental protection, and, accordingly, the first prong of the TPR test has been satisfied.

Regarding the second prong of the test, statutory grounds for termination, the court found that Mother had abandoned the children for at least 90 days, that she had failed to provide them essential parental care and protection for at least six months with no reasonable expectation of improvement considering their ages, that for reasons other than poverty alone she failed to provide the essentials of life for them, again, with no expectation of improvement given their ages, and that the children had been in foster care for 15 months out of the 48 months preceding the filing of the TPR petitions. KRS 625.090(2)(a), (e), (g), and (j).

There is no dispute that the children have been removed from Mother's care since October 4, 2022, and the TPR petitions were filed just over 15 months later on March 15, 2024. Therefore, the criteria for KRS 625.090(2)(j) has been met. And, although only one ground is required, we also note that the court's determination that Mother failed to provide parental protection for six months and that there was no reasonable expectation of improvement is supported by the findings and record due to her repeated refusal to discontinue contact with Father, both before the DNA case commenced and thereafter. Therefore, the second prong of the TPR test has been satisfied.

-11-

Finally, we consider the third prong of the test, the children's best

interest.  In accordance with KRS 625.090(3)[6] the family court considered CHFS's

efforts to both prevent the children's removal from the home and to reunify the

family as well as the social worker's statement that there were no additional

---

[6]  KRS 625.090(3) provides that, when determining the best interests of the child, the court must consider the following factors:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
>
> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;
>
> (d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and
>
> (f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

services that were likely to aid in reunification. It further considered Dr. Ebben's findings regarding Mother's borderline intellectual functioning, her continued contact with Father, her agreement during the most recent DNA proceeding to voluntarily terminate her parental rights, her failure to complete reunification services, and the children's improvement while in CHFS's custody.

Having reviewed the record, we conclude that the court's finding that Mother failed to complete any of the reunification services offered by CHFS is not supported by the evidence. The social worker admitted in her testimony that Mother had completed the requested UK TAP assessment and Dr. Ebben's assessment and that she maintained her supervised visitation. However, under the facts of this case, we are convinced that the error is harmless and does not merit reversal.

CR 61.01 instructs that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." An error is harmless if "the result probably would have been the same absent the error[.]" *T.R.W. v. Cabinet for Health and Family Servs.*, 599 S.W.3d 455, 465 (quoting *CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 69 (Ky. 2010)). The family court "has substantial discretion in determining the best interest[] of the child[ren] under KRS 625.090[(3)]." *D.G.R.*, 364 S.W.3d at 112. A court abuses its discretion if its decision is arbitrary, unreasonable, unfair,

or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In exercising its discretion in this case, the court gave great weight to Mother's former willingness to terminate her parental rights, whereafter she ceased having contact with the children, and her pattern of poor decision making, evidenced by the children being removed from her care three times in just over five years and her continued contact with Father in defiance of CHFS's directive and court orders. The mere fact that Mother engaged in assessments without some evidence that these actions would have addressed the court's concerns, does not demonstrate that the result would have been different or that the court abused its discretion in determining that termination was in the children's best interest.

## CONCLUSION

For the foregoing reasons, the judgments of the Martin Circuit Court are AFFIRMED.

ALL CONCUR.

-14-

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE
                                        COMMONWEALTH OF
Jacob Thomas Moak                       KENTUCKY, CABINET FOR
Prestonsburg, Kentucky                  HEALTH AND FAMILY
                                        SERVICES:

                                        Dilissa G. Milburn
                                        Mayfield, Kentucky