RENDERED:  MAY 17, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0340-MR

MYLES COSGROVE                                                            APPELLANT


v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE MELISSA L. BELLOWS, JUDGE
            ACTION NO. 22-CI-001802


LOUISVILLE METRO POLICE
DEPARTMENT METROPOLITAN
GOVERNMENT AND LOUISVILLE
METRO POLICE MERIT BOARD                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND GOODWINE,
JUDGES.

THOMPSON, CHIEF JUDGE:  Myles Cosgrove appeals from an order of the

Jefferson Circuit Court which affirmed an order of the Louisville Metro Police

Merit Board ("Board").  The Board's order upheld the decision of the Louisville

Metro Police Department ("LMPD") to terminate Appellant's employment.

Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Appellant was involved in the execution of a search warrant at the home of Breonna Taylor in Louisville, Kentucky. LMPD officers at the residence forced entry into the home. Sergeant John Mattingly was the first officer inside the home, closely followed by Appellant. Upon entering, Ms. Taylor's boyfriend, Kenneth Walker, fired one shot at the officers.[1] Sgt. Mattingly was struck in the leg and fell down. Both Sgt. Mattingly and Appellant returned fire. Mr. Walker and Ms. Taylor were standing together at the end of a hallway when the shooting began. Ms. Taylor was struck and killed. Bullets from both Sgt. Mattingly and Appellant struck Ms. Taylor, but it was determined that one of Appellant's bullets caused her death. Internal investigations by the LMPD and an investigation by the Kentucky Attorney General's office then ensued.

At the conclusion of the investigations, Chief of the LMPD, Yvette Gentry, terminated Appellant's employment. She concluded that he violated Standard Operating Procedure ("SOP") 9.1.12, which concerns the use of deadly force. SOP 9.1.12 states in relevant part:

---

[1] Mr. Walker stated that he and Ms. Taylor believed someone was trying to break into their home. He stated they did not know it was the police.

Justification for the use of deadly force must be limited to what reasonably appears to be the facts known, or perceived, by an officer under the circumstances. Facts not known to an officer, no matter how compelling, cannot be considered in later determining whether the use of deadly force was justified. Deadly force, as with all uses of force, may not be resorted to unless other reasonable alternatives have been exhausted, would clearly be ineffective, or exigent circumstances exist. Deadly force is authorized in defense of oneself or another when the officer reasonably believes, based on the facts and circumstances, that the person against whom the force is used poses an immediate threat of death or serious injury to the officer or another person[.]

. . .

The officer must be able to justifiably articulate his/her actions. . . .

Officers discharging a firearm should remain cognizant of the following:

- The direction in which the firearm is to be discharged.

- The danger of discharging a firearm while running or moving.

Chief Gentry believed Appellant violated SOP 9.1.12 because he was unable to clearly identify the target when he began shooting. In addition, Chief Gentry faulted Appellant for being unable to tell if the target was isolated or if there were other people around when he began firing.[2] Appellant described not

---

[2] Target identification and target isolation are the primary issues in this case. Target identification is the requirement that an officer identify a person as a threat and not just identify a

-3-

being able to see very well because the home was dark. Before he began firing his weapon, he saw a shadowy figure at the end of a hallway with another, smaller shadowy figure or object attached to it. Appellant was unsure what this second shadowy figure was.[3] He also stated he saw a muzzle flash come from the first figure. Upon seeing the flash and seeing Sgt. Mattingly fall, he began firing toward the first shadowy figure. Appellant also stated that once he began firing, he suffered from tunnel vision, making it harder for him to see in the dark home. Chief Gentry felt this was a violation of SOP 9.1.12 because Appellant was unable to adequately identify the threat and assess whether an ongoing threat existed.

Chief Gentry also faulted Appellant for failing to use his body camera during the incident, which was a violation of SOP 4.31.6. Appellant was assigned a body camera as part of his regular equipment and he was required to use it for all police encounters.[4] At the time of the incident, Appellant was not wearing his body camera.

Appellant appealed his termination to the Board. The Board heard four days of testimony and received documents related to the internal

---

general area as having a threat in it. Target isolation is the requirement that an officer ensure a target is isolated from other people and that the target is sufficiently distinct from other people around.

[3] The first shadowy figure was Mr. Walker and the second figure was Ms. Taylor.

[4] There are certain situations where a body camera does not have to be used, however, none of those exceptions applied in this case.

investigations. The Board ultimately upheld Appellant's termination. The Board agreed with Chief Gentry and found that Appellant failed to adequately identify and isolate his target. Appellant did agree before the Board that he violated the SOP regarding his body camera. Appellant then appealed to the Jefferson Circuit Court. That court affirmed and this appeal followed.

## STANDARD OF REVIEW

This Court's standard of review for an administrative adjudicatory decision is the clearly erroneous standard. *Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986). A decision is clearly erroneous if it is not supported by substantial evidence. *Id.*

> Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnotes and citations omitted). We also review the decision of the administrative agency to make sure the agency did not act in an arbitrary manner, provided sufficient procedural due process, and acted within its statutory powers.

-5-

*American Beauty Homes Corp. v. Louisville and Jefferson Cnty. Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964).

## ANALYSIS

Appellant's first argument on appeal is that the Board made erroneous findings and that there was not substantial evidence to support the Board's conclusion that he did not adequately identify or isolate his target.

Appellant first takes issue with the finding found in paragraph 237 of the Board's order. That paragraph states:

> Because LMPD officers are taught in training to be able to identify a target as well as to isolate it from other innocent bystanders who might be shot in the event of reckless firing of a service weapon, Mr. Cosgrove violated those policies. The Board accepts the testimony of Mr. Lacefield with regard to these issues.

Lieutenant Stephen Lacefield, a LMPD firearms training officer, testified before the Board. He was questioned thoroughly about target identification and target isolation. Lt. Lacefield did not review the records from internal investigation in this matter; he just gave general opinions about the firearm matters at hand. He did not give an opinion about whether Appellant violated the target isolation and target identification training policies.

Appellant claims that the finding in paragraph 237 is erroneous because Lt. Lacefield did not opine about whether Appellant violated policies, but the Board found that Lt. Lacefield's testimony supported Appellant's termination.

We believe Appellant has misconstrued what paragraph 237 actually says. We believe that the Board found that target identification and target isolation were taught to all officers as part of their training and based this finding on Lt. Lacefield's testimony. Appellant is correct that Lt. Lacefield did not state an opinion on whether Appellant violated these principles; however, Lt. Lacefield did conclusively state that target identification and target isolation were taught as part of officer firearm training and went into detail describing this training. Appellant and Chief Gentry also testified that target identification and target isolation are taught as part of training. We conclude that paragraph 237 was not erroneous and was based on substantial evidence that target identification and isolation are taught to all officers during training.

Appellant's next argument is that he presented unrebutted proof that he complied with the target identification and target isolation principles and the Board erred in finding to the contrary. Sergeant Jack Jawor testified on Appellant's behalf. He was the firearms training instructor when Appellant was in the training academy. Unlike Lt. Lacefield, Sgt. Jawor had reviewed the internal investigation file and believed Appellant complied with those standards. Appellant claims that Sgt. Jawor's expert opinion regarding firearms was unrebutted and should have led to a reversal of Chief Gentry's termination. We disagree.

Lt. Lacefield testified that target identification requires an officer to identify a specific person, not a general area. Lt. Lacefield also testified that, as to target isolation, the officer should make sure the target is sufficiently distinct from other people around it. We again agree with Appellant that Lt. Lacefield did not testify as to whether Appellant sufficiently identified or isolated his target; however, the evidence presented indicated Appellant fired at a shadowy figure after seeing a muzzle flash. Appellant also testified that there was another figure or object attached to the shadowy figure, but that he was not sure what it was. Appellant could not see either of the figures' hands or a weapon. While Sgt. Jawor believed Appellant acted appropriately, Chief Gentry believed this was insufficient target identification and isolation. In addition, Sergeant Andrew Meyer, who conducted one of the internal investigations in this matter, also testified that it was his opinion that Appellant did not know who or what he was shooting at.

Contrary to Appellant's argument, Sgt. Jawor's testimony was not unrebutted. Lt. Lacefield's definitions of target identification and isolation, along with the testimony of Chief Gentry and Sgt. Meyer, rebutted Sgt. Jawor's testimony. This caused the Board to have to weigh conflicting evidence. Ultimately, it is the Board's prerogative as to which evidence to give more weight. The Board held that Appellant did not adequately identify or isolate his target and

terminating his employment was appropriate. This is supported by the evidence and there was no error.

Appellant's next argument concerns issues related to him seeing flashing lights. This argument revolves around paragraphs 222, 224, and 225 in the Board's order. Paragraph 222 states: "At no point in Cosgrove's . . . first recorded statement did he use the term "muzzle flash" or talk about a "flash" from a gunshot or the firing of a weapon; only in a later interview or statement did he first use the term." Paragraph 224 states:

> The Board finds that after entering Breonna Taylor's apartment, Cosgrove was seeing flashes of light, and multiple ones at that, all but one had to have emanated from other than the gun used by Mr. Walker as that gun was found to have fired only one shot. Therefore, Cosgrove could not have appropriately identified a threat based only upon flashes of light, as all but one flash, if any, had to have come from what was friendly fire, that is, gunshots fired by Mr. Mattingly, Mr. Hankison, or even his own firearm.

Paragraph 225 states: "The Board finds that any additional flashes of light, to the extent they were caused by third-party gunfire, would have emanated from the weapons of Mr. Mattingly or Mr. Hankison and those would not have been targets suitable to draw the fire of Cosgrove."

Appellant argues that these criticisms are unfounded. As to paragraph 222, Appellant's argument is partially correct. Appellant did not use the term "muzzle flash" during his first interview, but did discuss how he believed the

-9-

flashes of light he was seeing inside the residence were coming from gunfire.

Based on the evidence, paragraph 222 is partially erroneous.

Paragraphs 224 and 225 indicate that the Board found that the majority of the flashing lights Appellant witnessed came from the firearms of other officers and not Mr. Walker. The Board believed if Appellant was relying on these other flashes of light to justify his firing of his weapon, he was acting in error. These paragraphs are not erroneous.

What we must determine is if the partially erroneous finding in paragraph 222 is sufficient to reverse the Board's decision. We believe it is not and that this is harmless error. Kentucky Rules of Civil Procedure ("CR") 61.01 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

"When considering a claim of harmless error under CR 61.01, the court determines whether the result probably would have been the same absent the error or whether

the error was so prejudicial as to merit a new trial." *CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 69 (Ky. 2010) (citations and footnotes omitted).

Here, it is clear that Appellant knew the flashing lights he witnessed in Ms. Taylor's apartment were coming from gunfire; however, substantial evidence supported the determination that Appellant was not clear on who he was firing at and whether there were multiple people in the line of fire. If we were to remove paragraphs 222, 224, and 225 from the Board's opinion, there would still be sufficient evidence to support Appellant's termination. Any error on this issue was harmless.

Appellant also argues that any criticism that he "fired wildly" were unfounded. In Chief Gentry's termination letter, she stated that Appellant's shots went in three different directions and the Board made findings that several shots were in the vicinity of the shadowy figure, but that some of Appellant's shots ended up in different parts of the residence. The evidence in the record indicates that some of Appellant's shots did end up in other parts of the residence. There was no error in this finding.

Appellant also claims that some of Sgt. Mattingly's shots went in different directions and he also struck Ms. Taylor; however, Sgt. Mattingly was not terminated. Appellant believes this entitles him to similar treatment. Chief Gentry and the Board found that mitigating circumstances allowed different treatment of

-11-

these officers.  Specifically, the fact that Sgt. Mattingly was shot would excuse some of his errant shots.  This is a reasonable conclusion and we will not disturb it.

In summary, all of the findings by the Board were based on substantial evidence, except for one.  That single finding, although clearly erroneous, was harmless error.  We reviewed the entire record in this case, including all the testimony given at the Board's hearing.  Based on the totality of the evidence, we believe the Board's determination that Appellant's employment was properly terminated is based on substantial evidence.

Appellant's next argument is that the Board erred in relying on Sgt. Mattingly's hearsay statements.  Sgt. Mattingly did not testify before the Board; however, transcriptions of the interviews he underwent during the internal investigations were submitted into evidence.  Sgt. Mattingly made statements that he was able to see more detail of Mr. Walker and could clearly identify him as a threat.

Police Merit Board Hearing Procedure 7.1 states that if an objection is not raised as to the admissibility of a document, report, or exhibit, then the issue is waived.  Appellant did not object to the hearsay evidence before the Board; therefore, this issue was waived.  *Arguendo*, even if it was not waived, we could exclude Sgt. Mattingly's statements and still conclude that there was substantial evidence that Appellant did not have sufficient target identification and isolation.

-12-

Appellant's next argument on appeal is that the Board's conclusions were erroneous because he was treated differently than other, similarly situated officers. He claims this is a violation of equal protection. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Weiand v. Board of Trustees of Kentucky Retirement Systems*, 25 S.W.3d 88, 92 (Ky. 2000) (citation omitted).

First, he compares himself to Sgt. Mattingly. As discussed previously, there were adequate reasons why the two were treated differently. Sgt. Mattingly was able to see more detail when he opened fire. Also, Sgt. Mattingly was shot, which would help excuse his errant shots. While Appellant and Sgt. Mattingly were in a similar situation, the totality of their circumstances were different. This supports the different outcomes.

Appellant also compares his situation with that of two other officers who were disciplined. They were not held to the target isolation or target identification standards, but were held to a "cognizant of the direction of their fire" standard. One of the officers was present at Ms. Taylor's home the night in question and opened fire through a patio door. He was unable to see anyone when he opened fire. The second officer was not involved with the events at Ms. Taylor's apartment. That officer shot at a person shooting at him from the backseat of a car. An innocent passenger in the car was struck and killed. That

officer's employment was not terminated. While different terminology might have been used in these cases, all three involved the issue of adequately identifying a target. The Board stated that they considered these different cases, but found they were too dissimilar to compare to Appellant. We find no error with this conclusion as the officers were not similarly situated.

Next, Appellant argues that the Board erred because it nullified his right to self-defense. Kentucky Revised Statutes ("KRS") 503.050 allows a person to use physical force, including deadly force, against another person for self-defense. Appellant argues that because he was cleared of criminal wrongdoing, he should not lose his employment. KRS 503.050 involves criminal liability and does not apply to administrative employment actions. Appellant cites to no case law or statute that states otherwise. Appellant can be not criminally liable, but still have violated LMPD policy. These are two different issues and this argument is without merit.

Appellant's final issue on appeal is that the evidence presented to the Board indicated that his termination was politically motivated. The Board heard evidence that Mayor Greg Fisher[5] told members of his staff that he wished all the officers involved in the death of Ms. Taylor could be fired. Appellant argues that

---

[5] Greg Fisher is no longer Mayor of Louisville.

this suggests his employment was terminated for political purposes and not because he violated policy.

The Board rejected this argument because there was no evidence that the mayor ordered Chief Gentry or other officials to fire Appellant. Chief Gentry testified that the mayor did not order her to fire Appellant. In addition, Sgt. Mattingly's employment was not terminated. The Board weighed the evidence regarding political motivations and found it lacking in support. We find no error.

## CONCLUSION

Based on the foregoing, we affirm. Substantial evidence supported the Board's conclusion that Appellant did not have sufficient target identification and isolation and his employment was properly terminated.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENTS
FOR APPELLANT:

L. Scott Miller
Derrick T. Wright
Lexington, Kentucky

BRIEF FOR APPELLEE
LOUISVILLE METRO POLICE
DEPARTMENT METROPOLITAN
GOVERNMENT:

Michael J. O'Connell
Jefferson County Attorney

Carrie Pearson Hall
David A. Sexton
Assistant Jefferson County Attorneys
Louisville, Kentucky

ORAL ARGUMENTS FOR
APPELLEE LOUISVILLE METRO
POLICE DEPARTMENT
METROPOLITAN GOVERNMENT:

David A. Sexton
Assistant Jefferson County Attorney
Louisville, Kentucky

BRIEF AND ORAL ARGUMENTS
FOR APPELLEE LOUISVILLE
METRO POLICE MERIT BOARD:

Mark W. Dobbins
Joanne Lynch
Louisville, Kentucky